05-3249-ag
Nethagani v. Mukasey

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: June 16, 2008           Decided: July 9, 2008)

Docket No. 05-3249-ag

- - - - - - - - - - - - - - - - - - - -x

KHALID NETHAGANI,

                 Petitioner,

       - v.-

MICHAEL B. MUKASEY, ATTORNEY GENERAL OF
THE UNITED STATES OF AMERICA,[*] WILLIAM
CLEARY, FIELD DIRECTOR, BUFFALO
DETENTION AND REMOVAL OFFICE,
DEPARTMENT OF HOMELAND SECURITY,

                 Respondents.

- - - - - - - - - - - - - - - - - - - -x

      Before:        JACOBS, Chief Judge, Straub, Circuit
Judge, and Jones, District Judge.[**]

---

[*] Pursuant to Federal Rule of Appellate Procedure
43(c)(2), Attorney General Michael B. Mukasey is
automatically substituted for former Attorney General John
Ashcroft as respondent in this case.

[**] The Honorable Barbara S. Jones, of the United States
District Court for the Southern District of New York,
sitting by designation.

Petition for review from a final order of the Board of Immigration Appeals denying petitioner asylum and withholding of removal based on its determination that the petitioner's non-aggravated felony conviction constituted a conviction of a "particularly serious crime." The petition is denied.

GERALD P. SEIPP, Clearwater, FL for Petitioner.

ZOE J. HELLER, Trial Attorney, Office of Immigration Litigation (Gail Y. Mitchell, Assistant United States Attorney, for Terrance P. Flynn, United States Attorney, Western District of New York, Buffalo, NY, on the brief) for Respondents.

DENNIS JACOBS, Chief Judge:

The Immigration and Nationality Act bars the grant of asylum or withholding of removal to an alien whom the Attorney General "determines" or "decides" has "been convicted by a final judgment of a particularly serious crime." 8 U.S.C. §§ 1158(b)(2)(A)(ii) (asylum); 1231(b)(3)(B)(ii) (withholding). Petitioner argues that only aggravated felonies qualify as "particularly serious crime[s]" within the meaning of those subsections. A

2

preliminary question is whether we retain appellate jurisdiction to decide that question.

**BACKGROUND**

In 1993, Khalid Nethagani, a native and citizen of India, was convicted in New York State Court of reckless endangerment in the first degree, having shot into the air a gun that he possessed illegally.  He was placed in removal proceedings (on unrelated grounds) in 1994.  Nearly a decade later, on May 30, 2003, the Board of Immigration Appeals ("BIA") dismissed Nethagani's final appeal from an order of removal entered by Immigration Judge Phillip J. Montante, Jr.  (Nethagani had appealed to the BIA on two previous occasions, and had won remand to an Immigration Judge both times.)  In disposing of the appeal, the BIA determined that Nethagani was ineligible for asylum, see 8 U.S.C. § 1158, and for withholding of removal, see 8 U.S.C. § 1231(b)(3), because he had been convicted of a "particularly serious crime," see 8 U.S.C. §§ 1158(b)(2)(A)(ii); 1231(b)(3)(B)(ii).  In re Nethagani, No. A28 999 892 (B.I.A. May 30, 2003), aff'g No. A 28 999 892 (Immig. Ct. Buffalo Mar. 29, 2001).

3

In April 2004, Nethagani sought a writ of habeas corpus in the Western District of New York. Pursuant to section 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310-11, which took effect on May 11, 2005, the petition was transferred to this Court, where it was docketed as a petition for review.

**DISCUSSION**

Nethagani argues that the BIA failed to consider the proper factors in determining whether he had been convicted of a particularly serious crime, and that only an aggravated felony may constitute a particularly serious crime for purposes of either 8 U.S.C. §§ 1158(b)(2)(A)(ii) (asylum) or 1231(b)(3)(B)(ii) (withholding).

We first decide whether we have subject-matter jurisdiction.

**I**

Because this case was initiated before April 1, 1997, and because the BIA decision was issued after October 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") transitional

4

jurisdictional rules apply. See IIRIRA § 309(c)(4), Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-626 to 627 (transitional jurisdictional rules); id. § 309(a) and (c)(1) (transitional jurisdictional rules apply to deportation proceedings pending on April 1, 1997); id. § 309(c)(4) (transitional rules apply to cases in which final order of deportation is entered after October 30, 1996). Those "transitional" jurisdictional rules were modified by the REAL ID Act:

> A petition for review filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . .) shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. § 1252), as amended by this section.

REAL ID Act § 106(d), 119 Stat. 311. Since IIRIRA instructed that petitions for review in "transitional rules" cases be filed under § 106 of the pre-IIRIRA version of the Immigration and Nationality Act, 8 U.S.C. § 1105a (1994), see IIRIRA § 309(c)(1), the REAL ID Act applies our current (i.e., REAL ID-era) jurisdictional rules to "transitional rules" cases. See Iouri v. Ashcroft, 487 F.3d 76, 83-84 (2d

5

Cir. 2007) (applying the REAL ID Act's jurisdictional rules to a "transitional rules" IIRIRA case when the REAL ID Act was enacted during the pendency of appeal). Our jurisdiction to decide this petition for review is therefore governed by 8 U.S.C. § 1252, which contains jurisdiction stripping provisions.

Does § 1252 relieve us of jurisdiction to review the agency's determination that Nethagani committed a "particularly serious crime" for purposes of 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii)?

The government reminds us that we lack jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title [authority to apply for asylum]." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphases added). Both statutory provisions at issue here fall within "this subchapter" for purposes of § 1252. See Guyadin v. Gonzales, 449 F.3d 465, 468 (2d Cir. 2006) (explaining that the subchapter referred to in § 1252 encompasses 8 U.S.C. §§ 1151-1381).

6

As to <u>asylum</u>, the provision limiting an alien's eligibility reads, in relevant part:

> Paragraph (1) [which establishes eligibility for asylum] shall not apply to an alien if the Attorney General <u>determines</u> that--
>
> . . .
>
> (ii) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States[.]

8 U.S.C. § 1158(b)(2)(A) (emphasis added). And the provision limiting the grant of <u>withholding</u> reads, in relevant part:

> Subparagraph (A) [which establishes an alien's entitlement to withholding of removal] does not apply to an alien . . . if the Attorney General <u>decides</u> that--
>
> . . .
>
> (ii) the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States[.]

8 U.S.C. § 1231(b)(3)(B) (emphasis added).

Thus the two provisions authorize the Attorney General (respectively) to "determine[]" or "decide[]" that the alien was convicted of a particularly serious crime.[1] The

---

[1] If so, the BIA has held that the alien necessarily constitutes "a danger to the community of the United States." We have accepted the BIA's interpretation of the statute. <u>See</u> <u>Ahmetovic v. INS</u>, 62 F.3d 48, 52-53 (2d Cir.

7

question is not whether these inquiries require an exercise of discretion. They probably do. We must also determine whether the text of the subchapter in which they appear "specifie[s]" that the "decision" is "in the discretion of the Attorney General." See 8 U.S.C. § 1252(a)(2)(B)(ii). We hold that it does not.

This Court has concluded that § 1252(a)(2)(B)(ii) strips us of jurisdiction to review certain discretionary decisions.[2] In each such instance, the relevant provision

_____

1995).

[2] We have concluded that § 1252(a)(2)(B)(ii) strips our jurisdiction to review grants or denials of the following:

- Relief under former section 212(c) of the Immigration and Nationality Act, see 8 U.S.C. § 1182(c) (repealed 1996) (". . . may be admitted in the discretion of the Attorney General"). See Blake v. Carbone, 489 F.3d 88, 98 n.7 (2d Cir. 2007); Avendano-Espejo v. DHS, 448 F.3d 503 (2d Cir. 2006);

- Hardship waivers under 8 U.S.C. § 1186a(c)(4) ("The Attorney General, in the Attorney General's discretion, may . . . ."). See Atsilov v. Gonzales, 468 F.3d 112, 116-17 (2d Cir. 2006);

- Hardship waivers under 8 U.S.C. § 1182(i) ("The Attorney General may, in the discretion of the Attorney General . . . ."). See Jun Min Zhang v. Gonzales, 457 F.3d 172, 175-76 (2d Cir. 2006);

- Waivers of inadmissibility under 8 U.S.C. § 1182(d)(11) ("The Attorney General may, in his discretion . . . ."). See Saloum v. U.S. Citizenship & Immig. Servs.,

8

authorizing the Attorney General to act explicitly characterized the act as discretionary. Cf. Sanusi v. Gonzales, 445 F.3d 193, 199 (2d Cir. 2006) (per curiam) (holding that § 1252(a)(2)(B)(ii) does not strip our jurisdiction to review decisions to grant or deny continuance motions because "continuances are not even mentioned in the subchapter"). So the government is now asking us to do something we have not done before.

Given the "strong presumption in favor of judicial review of administrative action," see INS v. St. Cyr, 533 U.S. 289, 298 (2001), we hold that, when a statute authorizes the Attorney General to make a determination, but lacks additional language specificly rendering that determination to be within his discretion (e.g., "in the discretion of the Attorney General," "to the satisfaction of the Attorney General," etc.), the decision is not one that is "specified . . . to be in the discretion of the Attorney General" for purposes of § 1252(a)(2)(B)(ii).

Because neither § 1158(b)(2)(A) nor § 1231(b)(3)(B) expressly places the determination within the discretion of the Attorney General, we conclude that neither provision

_____

437 F.3d 238, 242-44 (2d Cir. 2006).

"specifie[s]" that the decision is within his "discretion." We therefore determine that § 1252(a)(2)(B)(ii) does not abate our power to review the decision that Nethagani was convicted of a particularly serious crime.  Accord Alaka v. Att'y Gen., 456 F.3d 88, 98, 101-02 (3d Cir. 2006).

**II**

Nethagani argues that the BIA failed to follow its own precedents in determining that his first degree reckless endangerment conviction was a particularly serious crime. We disagree.

The Immigration and Nationality Act does not define a "particularly serious crime," though it does state parameters, set out in the margin,[3] for crimes that are particularly serious per se.  Nethagani's offense--first degree reckless endangerment--is not per se particularly

---

[3] For purposes of the withholding of removal provision: if an alien has been convicted of one or more aggravated felonies that results in an aggregate prison sentence of at least five years, then he has per se been convicted of a particularly serious crime.  See 8 U.S.C. § 1231(b)(3)(B). For purposes of the asylum provision: all aggravated felonies are per se particularly serious crimes, see 8 U.S.C. § 1158(b)(2)(B)(i), as are all crimes the Attorney General so designates by regulation, see id. § 1158(b)(2)(B)(ii).

serious. In such a case as this, the BIA exercises the Attorney General's discretion to determine whether the crime was particularly serious using the guideposts set out in In re Frentescu, 18 I. & N. Dec. 244, 247 (B.I.A. 1982), modified, In re C-, 20 I. & N. Dec. 529 (B.I.A. 1992): (1) "the nature of the conviction," (2) "the circumstances and underlying facts of the conviction," (3) "the type of sentence imposed" and (4) "whether the type and circumstances of the crime indicate that the alien will be a danger to the community[,]" id. at 247. And crimes against persons are more likely to be particularly serious than are crimes against property. Id.

Here, the BIA addressed each Frentescu factor. The Board properly took into consideration: (1) that reckless endangerment "involves behavior which could end a human life"; (2) Nethagani's version of the events underlying his reckless endangerment conviction; (3) the sentence ("[A]lthough the respondent could have received a much longer sentence, he was sentenced to several months of incarceration, which was followed by 5 years of probation. This is not insignificant."); and (4) that firing a pistol into the air presents "a high potential for serious or fatal

11

harm to the victim or an innocent bystander." The BIA properly applied its own precedent in determining that Nethagani had been convicted of a particularly serious crime for purposes of 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii).

**III**

Nethagani next contends that particularly serious crimes constitute a subset of aggravated felonies, i.e., that only aggravated felonies may qualify as particularly serious crimes. Nethagani relies on two statutory provisions that respectively create per se categories for purposes of the asylum provision and for purposes of the withholding provision.

**Asylum.** The asylum provision states that "an alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1158(b)(2)(B)(i). Every aggravated felony is therefore a per se particularly serious crime for purposes of asylum. Nethagani asks us to infer that every particularly serious crime must be an aggravated felony for

12

purposes of asylum.

The wording of § 1158(b)(2)(B)(i),[4] which is in issue here, is nearly identical to the wording of the former withholding statute, 8 U.S.C. § 1253(h)(2) (1995),[5] which we construed to permit the Attorney General (or immigration officials exercising their delegated authority on the Attorney General's behalf) to determine that a non-aggravated felony crime is a particularly serious crime. See Ahmetovic v. INS, 62 F.3d 48, 52 (2d Cir. 1995). Our reasoning in Ahmetovic with respect to the old version of the withholding statute remains persuasive for the purpose of interpreting the current version of the asylum statute. We therefore reject Nethagani's proposed statutory construction. See also Ali v. Achim, 468 F.3d 462, 468-69 (7th Cir. 2006). The Attorney General (or his agents) may determine that a crime is particularly serious for purposes of the asylum statute, 8 U.S.C. § 1158(b)(2)(B)(i), even though it is not an aggravated felony.

---

[4] "[A]n alien who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." 8 U.S.C. § 1158(b)(2)(B)(i).

[5] "[A]n alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime." 8 U.S.C. § 1253(h)(2) (1995).

13

**Withholding of Removal.** Under the provisions governing withholding of removal,

> an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

8 U.S.C. § 1231(b)(3)(B). Nethagani urges us to read this provision to mean that <u>only</u> aggravated felonies can qualify as particularly serious crimes, as the Third Circuit has done. <u>See</u> <u>Alaka v. Att'y Gen.</u>, 456 F.3d 88, 105 (3d Cir. 2006).

However, the BIA has recently rejected Nethagani's--and the Third Circuit's--interpretation in a precedential opinion. <u>See</u> <u>In re N-A-M-</u>, 24 I. & N. Dec. 336, 337-41 (B.I.A. 2007) <u>appeal docketed</u>. Nos. 08-9527, 07-9580 (10th Cir. Nov. 11, 2007). Relying on the text, history, and background of § 1231(b)(3)(B), the BIA concluded that the second sentence of § 1231(b)(3)(B) "means only that aggravated felonies for which sentences of less than 5 years' imprisonment were imposed may be found to be

14

'particularly serious crimes,' not that <u>only</u> aggravated felonies may be found to be such crimes." <u>Id.</u> at 341.

We will defer to the BIA's construction of ambiguous statutory language so long as its interpretation is reasonable. <u>See</u> <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-44 (1984); <u>Khouzam v. Ashcroft</u>, 361 F.3d 161, 164 (2d Cir. 2004). (The Third Circuit, in deciding <u>Alaka</u>, had no occasion to consider whether the statute was ambiguous because there was not yet a BIA opinion on point.) We cannot find that the portion of § 1231(b)(3)(B) laid out in the block quotation, <u>supra</u>, speaks clearly to the question raised in this petition because its second sentence admits of at least two readings: either (1) it contributes to the first sentence's definition of "particularly serious crime," <u>see</u> <u>Alaka</u>, 456 F.3d at 104-05, or (2) it clarifies that an aggravated felony may be a particularly serious crime regardless of sentence length, <u>see</u> <u>N-A-M-</u>, 24 I. & N. Dec. 336. We accept the BIA's interpretation as permissible because it naturally and reasonably reads the second sentence of § 1231(b)(3)(B) as a caution against drawing an available inference from the prior sentence.

15

**CONCLUSION**

We have considered Nethagani's remaining arguments and find them meritless.  For the foregoing reasons, we deny the petition for review.

16