**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KHALIL-SALIM ARBID, *Petitioner*, | No. 09-73211 |
| v. | Agency No. A078-049-035 |
| ERIC H. HOLDER, JR., Attorney General, *Respondent*. | ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 15, 2012–San Francisco, California

Filed April 3, 2012
Amended November 9, 2012

Before: Susan P. Graber and Richard C. Tallman,
Circuit Judges, and Robert J. Timlin,[*]
Senior District Judge.

Per Curiam Opinion

---

[*] The Honorable Robert J. Timlin, Senior United States District Judge
for the Central District of California, sitting by designation.

**SUMMARY**[**]

**Immigration**

The panel denied Khalil-Salim Arbid's petition for review from the Board of Immigration Appeals' decision finding that his conviction for mail fraud, in violation of 18 U.S.C. § 1341, constituted a particularly serious crime ("PSC") that rendered him ineligible for asylum or withholding of removal. As a matter of first impression, the panel held that the BIA's determination that an alien was convicted of a PSC is a discretionary decision which this court reviews under an abuse of discretion standard. The panel wrote that employing the abuse of discretion standard is consistent with the Supreme Court's decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010), and this court's recent decision in *Delgado v. Holder*, 648 F.3d 1095 (9th Cir. 2011) (en banc). On the merits, the panel held that the BIA did not abuse its discretion in holding that Arbid was convicted of a PSC.

The panel also affirmed the BIA's decision that Arbid was not eligible for deferral of removal under the Convention Against Torture, because conditions had changed in Lebanon such that it was no longer more likely than not that he would be tortured upon his return there for his anti-Syrian views.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Sharon Parker, Esq., Las Vegas, NV, for petitioner Khalil-Salim Arbid

Kiley L. Kane, Esq., United States Department of Justice, Civil Division, Washington, D.C., for respondent Eric Holder Jr.

**ORDER**

The opinion in the above-captioned matter filed on April 3, 2012, and published at 674 F.3d 1138 (9th Cir. 2012), is amended as follows and is simultaneously filed with this order:

At slip opinion page 3655, line 27, replace <this case-by-case adjudicatory process> with <the discretion afforded the Attorney General in § 1231(b)(3)(B)(ii)>.

At slip opinion page 3656, footnote 3, line 3, add <, including legal challenges to § 1231(b)(3)(B)(ii),> between <constitutional and legal challenges> and <are questions of law that we review de novo.>

At slip opinion page 3656, footnote 3, add, at the end of the footnote, <Moreover, challenges to the BIA's interpretation of ambiguous statutory language would still be analyzed under the framework set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).>

At slip opinion page 3656, line 12, after <(internal quotation marks omitted)>, add: <; *United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc)>.

At slip opinion page 3656, line 14, add a footnote after <*Frentescu* factors.>, stating: <Arbid did not raise a legal challenge to the BIA's interpretation of § 1231(b)(3)(B)(ii). He merely challenged the IJ and BIA's application to his case of its own settled standard. *Cf. Beltran-Zavala v. INS*, 912 F.2d 1027 (9th Cir. 1990) (per curiam), *superseded in other part by statute as stated in Urbina-Mauricio v. INS*, 989 F.2d 1085 (9th Cir. 1993).>

No future petitions for rehearing or rehearing en banc will be entertained.

IT IS SO ORDERED.

---

**OPINION**

PER CURIAM:

Khalil-Salim Arbid ("Arbid"), a native and citizen of Lebanon, petitions for review of a decision from the Board of Immigration Appeals ("BIA"). The BIA upheld the immigration judge's ("IJ") determination that Arbid had committed a particularly serious crime, rendering him ineligible for asylum or withholding of removal. The BIA also affirmed the IJ's finding that conditions had changed in Lebanon such that it was no longer more likely than not that Arbid would be tortured upon his return. Arbid argues that his mail fraud conviction was not a particularly serious crime

and that it is still more likely than not that he will be tortured upon his return to Lebanon. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1), and we deny the petition.

I

After suffering torture at the hands of Syrian intelligence agents in Lebanon in the late 1990s, Arbid fled to the West. He traveled to Mexico in 2000 and soon entered the United States at the Port of Entry at Douglas, Arizona, falsely claiming to be an American citizen.

Three months after his illegal entry, Arbid was served with a Notice to Appear before an IJ. Arbid admitted that he had lied about his citizenship to gain entry into the United States, but he sought asylum and withholding of removal. The IJ determined that Arbid had a well-founded fear of persecution for his political beliefs should he be removed to Lebanon and granted Arbid's application for asylum and withholding of removal.

In April 2008, Arbid pleaded guilty to mail fraud under 18 U.S.C. § 1341. According to the Statement of Facts accompanying his plea agreement, Arbid was involved in a two-man scheme to defraud mortgage lenders. The scheme's general purpose was to receive multiple "loans" from different institutions using a single house in suburban Washington, D.C., as collateral. Arbid created false documents to induce lenders to issue loans, the proceeds of which he deposited into his personal checking account. Arbid was sentenced to sixteen months in prison and was ordered to pay more than $650,000 in restitution.

After Arbid served his criminal sentence, the Department of Homeland Security ("DHS") moved to reopen Arbid's removal proceedings, charging that Arbid was no longer eligible for asylum or withholding of removal because he had been convicted of a particularly serious crime. After hearing Arbid's description of his criminal activities and after reviewing the criminal record, the IJ held that Arbid's crime of conviction was particularly serious, rendering him ineligible for asylum or withholding of removal. The IJ then held a hearing to determine whether conditions had changed in Lebanon such that it was no longer more likely than not that Arbid would be tortured if he was removed there. After both parties submitted exhibits about country conditions in Lebanon, the IJ determined that conditions had changed such that Arbid was not eligible for deferral of removal under the Convention Against Torture ("CAT"). The BIA upheld the IJ's decision in a reasoned opinion.

II

A

Under 8 U.S.C. § 1231(b)(3)(B)(ii), an alien is not eligible for withholding of removal if the Attorney General—or its delegate, the BIA[1]—"decides" that the alien has "been convicted by a final judgment of a particularly serious crime." As we recently held in *Delgado v. Holder*, 648 F.3d 1095 (9th Cir. 2011) (en banc), "we have jurisdiction to review the BIA's determination that an alien has been convicted of a

---

[1] "As adjudicator in immigration cases, the Board exercises authority delegated by the Attorney General." *Kucana v. Holder*, 130 S. Ct. 827, 832 (2010).

'particularly serious crime' and is therefore ineligible for withholding of removal." *Id.* at 1097 (overruling *Matsuk v. INS*, 247 F.3d 999, 1002 (9th Cir. 2001)).**[2]**

B

Although we have recognized our jurisdiction to review BIA decisions on particularly serious crimes, we have not announced a standard of review for those decisions. *See id.* at 1108 (failing to reach the standard-of-review issue because the BIA had not met its minimum procedural requirements under the Due Process Clause). Based on our prior case law interpreting § 1231(b)(3)(B)(ii), we now hold that determining whether a crime is particularly serious is an inherently discretionary decision, and we will review such decisions for

---

**[2]** At oral argument, the government contended—for the first time—that we lack jurisdiction to review Arbid's removal order because he was found removable as an aggravated felon. *See* 8 U.S.C. § 1252(a)(2)(C). Upon closer reading of the record, the government is mistaken. DHS had originally charged Arbid as removable for having committed an aggravated felony, but later withdrew that charge. Thus, as was precisely the case in *Delgado*, we need not reach the issue of whether § 1252(a)(2)(C) bars our review. *See Delgado*, 648 F.3d at 1098 n.5.

We called for additional briefing after oral argument. The government now argues in its supplemental brief that we lack jurisdiction because Arbid is removable as an alien convicted of a crime involving moral turpitude ("CIMT"). *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). This argument is not only improperly raised, but is also completely unsupported by the record. Neither the IJ's decision nor the BIA's opinion makes even passing reference to Arbid's being convicted of a CIMT. Thus, despite the government's argument to the contrary, we again hold that the criminal alien review bar does not apply in cases like this one.

abuse of discretion. The Supreme Court's decision in *Kucana v. Holder*, 130 S. Ct. 827 (2010), and our recent decision in *Delgado*, do not require a different outcome. To the contrary, employing an abuse-of-discretion standard of review is consistent with those cases and the law of our sister circuits.

C

Our analysis begins with the text of § 1231(b)(3)(B)(ii) itself. *See Rodriguez v. Holder*, 619 F.3d 1077, 1079 (9th Cir. 2010) (per curiam). Section 1231(b)(3)(B)(ii) states that an alien is ineligible for withholding of removal "if the Attorney General decides" that the alien has been convicted of a particularly serious crime. Our pre-*Delgado* cases properly interpreted the particularly serious crime "decisions" to be within the Attorney General's discretion. *See Matsuk*, 247 F.3d at 1002. This approach is consistent with the BIA's own interpretation of the statute. *See In re N-A-M-*, 24 I & N Dec. 336, 344 (B.I.A. 2007) (describing determinations of particularly serious crimes as "inherently discretionary").

D

Because of our consistent treatment of particularly serious crime determinations as discretionary, we previously interpreted 8 U.S.C. § 1252(a)(2)(B)(ii)—the so-called "discretionary review bar"—to divest us of jurisdiction to review such determinations. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (explaining that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General"); *see also Matsuk*, 247 F.3d at 1002 (holding that, because

particularly serious crime determinations are discretionary, "[s]ection 1252(a)(2)(B)(ii) divests this court of jurisdiction to review this issue").

Our interpretation of § 1252(a)(2)(B)(ii) changed, however, after the Supreme Court's decision in *Kucana*. At issue in *Kucana* was the BIA's denial of an alien's motion to reopen his immigration proceedings. 130 S. Ct. at 831. Section 1229a(C)(7)—the section of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 that covers motions to reopen—is silent as to whether the decision to deny a motion to reopen is within the Attorney General's discretion. *See Kucana*, 130 S. Ct. at 831 (citing § 1229a(C)(7)). The Attorney General, however, issued a *regulation* declaring such decisions to be discretionary. *See id.* at 832 (citing 8 C.F.R. § 1003.2(a)). The Seventh Circuit, recognizing the Attorney General's discretion as announced in the regulation, held that § 1252(a)(2)(B)(ii) precluded judicial review of the decision to deny the motion to reopen. *Id.* at 833.

The Court, recognizing "the presumption favoring judicial review of administrative action," *id.* at 839, held that § 1252(a)(2)(B)(ii) does not prohibit judicial review of "determinations declared discretionary by the Attorney General himself through regulation," *id.* at 831. Rather, the statute "bar[s] court review of discretionary decisions only when Congress itself set[s] out the Attorney General's discretionary authority in the statute." *Id.* at 837. A contrary ruling, the Court explained, would grant the BIA "a free hand to shelter its own decisions from abuse-of-discretion appellate court review simply by issuing a regulation declaring those decisions 'discretionary.'" *Id.* at 840.

In our recent en banc decision in *Delgado*, we applied the Court's *Kucana* rationale to BIA determinations of particularly serious crimes. *Delgado*, 648 F.3d at 1100. We interpreted *Kucana* to mean that § 1252(a)(2)(B)(ii) only bars review of a discretionary decision when "the statute explicitly refers to the discretion of the Attorney General." *Id.* Because § 1231(b)(3)(B)(ii) merely allows the Attorney General to "decide" whether the alien's crime was particularly serious, the language "does not explicitly vest discretion in the Attorney General." *Id.* Thus, we have jurisdiction to review such decisions. *Id.*

But simply because the statute does not "explicitly vest" the Attorney General with discretion to decide whether a crime is particularly serious does not mean that such decisions are not discretionary. Indeed, as the Court pointed out in *Kucana*, a BIA decision can still be discretionary without triggering § 1252(a)(2)(B)(ii)'s discretionary review bar. In *Kucana*, the Court recognized that, notwithstanding its narrow interpretation of § 1252(a)(2)(B)(ii), BIA decisions concerning motions to reopen are still inherently discretionary. 130 S. Ct. at 834. The Court affirmed that such decisions are properly reviewed for abuse of discretion. *Id.* ("Mindful of the Board's 'broad discretion' in such matters, however, courts have employed a deferential, abuse-of-discretion standard of review.").

Without expressly saying so, our opinion in *Delgado* recognized that particularly serious crime determinations are within the Attorney General's discretion. We explained that the Attorney General has the "authority to determine that, under the circumstances presented by an individual case, a crime was 'particularly serious.'" *Delgado*, 648 F.3d at 1105.

We also recognized that these determinations are informed by a series of factors that the BIA itself has identified, including "'the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.'" *Id.* at 1107 (quoting *In re Frentescu*, 18 I & N Dec. 244, 247 (B.I.A. 1982)).

Given the discretion afforded the Attorney General in § 1231(b)(3)(B)(ii), other circuits have held particularly serious crime determinations to be discretionary—and have reviewed them on an abuse-of-discretion standard—notwithstanding the inapplicability of § 1252(a)(2)(B)(ii). *See, e.g.*, *Gao v. Holder*, 595 F.3d 549, 557 (4th Cir. 2010) (referring to particularly serious crime determinations as within the Attorney General's discretion and recognizing that such determinations are reviewed for abuse of discretion), *cert. denied*, 131 S. Ct. 898 (2011); *see also Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008) (recognizing that particularly serious crime determinations are within the BIA's discretion and upholding the BIA's determination because it had followed the *Frentescu* factors). Thus, we hold that the BIA's determination that an alien was convicted of a particularly serious crime is a discretionary decision, and we review such decisions under an abuse-of-discretion standard.[3]

---

[3] As we have explained in text, the BIA's assessment and weighing of the *Frentescu* factors is a discretionary decision. Nothing in our opinion should be read to alter the principle that constitutional and legal challenges, including legal challenges to § 1231(b)(3)(B)(ii), are questions of law that we review de novo. *Lopez-Cardona v. Holder*, 662

E

On abuse-of-discretion review, we may disturb the BIA's ruling if the BIA acted "arbitrarily, irrationally, or contrary to law." *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir. 2000) (internal quotation marks omitted); *United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc). In this case, Arbid argues that the BIA and IJ erred in assessing and weighing the *Frentescu* factors.[4] We disagree.

Neither the BIA nor the IJ abused its discretion in holding that Arbid was convicted of a particularly serious crime. The IJ began his analysis with a review of the *Frentescu* factors. He looked at the conviction itself, a guilty plea for mail fraud. He reviewed the underlying facts of the conviction, studying the Statement of Facts that accompanied Arbid's guilty plea and asking Arbid questions about the crime. He paid special attention to Arbid's sentence, including the "substantial" 16-month term of imprisonment and the $650,000 restitution order. He was disturbed by Arbid's testimony insisting that he was the victim in the scheme, finding that Arbid "apparently

F.3d 1110, 1111 (9th Cir. 2011). Moreover, challenges to the BIA's interpretation of ambiguous statutory language would still be analyzed under the framework set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

[4] Arbid did not raise a legal challenge to the BIA's interpretation of § 1231(b)(3)(B)(ii). He merely challenged the IJ and BIA's application to his case of its own settled standard. *Cf. Beltran-Zavala v. INS*, 912 F.2d 1027 (9th Cir. 1990) (per curiam), *superseded in other part by statute as stated in Urbina-Mauricio v. INS*, 989 F.2d 1085 (9th Cir. 1993).

has no remorse and doesn't even take responsibility for his part in the conspiracy and in the fraudulent scheme." Finally, based on the "good likelihood" that Arbid's crimes could happen again, the IJ determined that Arbid "certainly would be a danger to the community."

The BIA reviewed the IJ's determination and held that the IJ "properly considered the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction." The BIA then considered the "nature and scope" of Arbid's crime, finding that the "complex scheme" to defraud victims of nearly $2 million constituted a particularly serious crime. We hold that the BIA and IJ did not abuse their discretion.

### III

Because we do not disturb the IJ and BIA's determination that Arbid committed a particularly serious crime, Arbid is not eligible for asylum or withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). Arbid's only remaining means of avoiding removal is deferral of removal under the CAT. *See* 8 C.F.R. § 1208.17(a). We review for substantial evidence the factual findings underlying the IJ and BIA's determination that Arbid was not eligible for deferral of removal under the CAT. *See Zheng v. Ashcroft*, 332 F.3d 1186, 1193 (9th Cir. 2003). To reverse the BIA's factual findings, "the evidence must compel a different conclusion from the one reached by the BIA." *Zheng v. Holder*, 644 F.3d 829, 835 (9th Cir. 2011).

Substantial evidence supports the IJ's decision, affirmed by the BIA, that conditions in Lebanon had changed such that

it was no longer more likely than not that Arbid would be tortured upon his return there. Since the late 1990s when Arbid was persecuted for his anti-Syrian views, the Syrian military has withdrawn from Lebanon, an anti-Hezbollah majority has wrested control of the legislature, and the political leader Arbid previously supported has returned from exile to help govern the state. This evidence does not compel a different result.

   **PETITION DENIED.**