19-1766
Mbendeke v. Garland

BIA
McCarthy, IJ
A062 016 418

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of May, two thousand twenty-one.

PRESENT:
> JOHN M. WALKER, JR.,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

Emily Mbendeke, FKA Landry Mbendeke, AKA Landry Tongaoume Bampell,

> *Petitioner*,

> v.                                                        19-1766-cv

Merrick B. Garland, United States Attorney General,

> *Respondent.*

_____

FOR PETITIONER:                          BRITT R. DEVANEY, Katten Muchin
                                         Rosenman LLP, Chicago, IL (Peter G.
                                         Wilson, Katten Muchin Rosenman LLP;
                                         Charles Roth, Tania Linares Garcia,
                                         National Immigrant Justice Center, Chicago,
                                         IL, *on the brief*).

FOR RESPONDENT:    JENNIFER R. KHOURI (Tim Ramnitz, *on the Brief*), Office of Immigration Litigation, *for* Brian M. Boynton, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC.

.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the petition for review is **DENIED**.

Petitioner Emily Mbendeke seeks review of a May 20, 2019 decision of the BIA affirming a December 3, 2018 decision of an Immigration Judge ("IJ") denying Mbendeke's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Landry Mbendeke*, No. A062 016 418 (B.I.A. May 20, 2019), *aff'g* No. A062 016 418 (Immig. Ct. N.Y.C. Dec. 3, 2018). We have reviewed both the IJ's and the BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We assume the parties' familiarity with the underlying facts and procedural history.

## I.    Particularly Serious Crime Bar

A person who has been convicted of a "particularly serious crime" is ineligible for asylum or withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2)(A)(ii), 1231(b)(3)(B)(ii). Where, as here, a crime is not per se particularly serious because it is not an aggravated felony, the agency considers "(1) 'the nature of the conviction,' (2) 'the circumstances and underlying facts of the conviction,' (3) 'the type of sentence imposed' and (4) 'whether the type and circumstances of the crime indicate that the alien will be a danger to the community'" to determine whether the crime is particularly serious. *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008) (quoting *Matter of Frentescu*, 18 I&N Dec. 244, 247 (B.I.A. 1982)). We review questions of law *de novo*, *see*

2

*Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009), but we review the agency's ultimate application of the particularly serious crime bar for abuse of discretion, *see Nethagani*, 532 F.3d at 154–55. The agency abuses its discretion when it acts "in an arbitrary or capricious manner," such as when its decision "provides no rational explanation, inexplicably departs from established policies, [or] is devoid of any reasoning." *Singh v. U.S. Dep't of Justice*, 461 F.3d 290, 293 (2d Cir. 2006) (internal quotation marks omitted).

Although we have never required it, BIA precedent states that "the individual facts and circumstances of the offense are" relevant to the particularly-serious-crime inquiry only if "the elements of the offense," considered in the abstract, "potentially bring the offense within the ambit of a particularly serious crime." *In re N-A-M-*, 24 I&N Dec. 336, 342 (B.I.A. 2007). Even assuming that the agency is required to conduct a threshold determination based on the elements of the offense, the agency properly engaged in that analysis. The IJ's decision stated the threshold question and the elements of the offense of conviction before considering individual factors, and the decision thus reflects an implicit conclusion that those elements potentially bring the offense within the ambit of a particularly serious crime.[1] *Cf. Bare v. Barr*, 975 F.3d 952, 962–63 (9th Cir. 2020) (declining to "put form over substance" by "requir[ing] an explicit consideration of the elements of the offense"). The IJ's threshold determination that a conspiracy to defraud the United States is potentially within the ambit of a particularly serious crime is consistent with BIA precedent, which has found various fraud crimes to be particularly serious. *See, e.g.*, *Doe v. Sessions*, 709 F. App'x 63, 67–68 (2d Cir. 2017) (conspiracy to commit wire fraud in excess of $10,000); *Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012) (mail fraud).

---

[1] In contrast to the petition addressed by the Third Circuit's decision in *Luziga v. Attorney General*, 937 F.3d 244, 253–54 (3d Cir. 2019), there is no indication that the agency misapprehended the offense elements before deciding that it was appropriate to weigh factors.

3

The agency did not abuse its discretion in finding that the individual facts and circumstances of Mbendeke's offense rendered it a particularly serious crime. The agency properly considered (1) the scope of the conspiracy, which included at least eight fraudulent marriages and four fraudulent visa petitions over the course of three years and involved fraudulent efforts to obtain benefits for people who were not family members; (2) Mbendeke's leadership role in the scheme; (3) her cooperation and sentence; and (4) the potential risk the offense posed to national security by undermining immigration procedures. *See Nethagani*, 532 F.3d at 156.

**II.     CAT Deferral**

A particularly serious crime is not a bar to deferral of removal under the CAT. 8 C.F.R. § 1208.17(a). A CAT applicant bears the burden to "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* § 1208.16(c)(2) (setting out standard for withholding of removal under CAT); *see id.* § 1208.17(a) (providing that CAT withholding standard applies equally to deferral of removal under CAT). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity." *Id.* § 1208.18(a)(1). In assessing the likelihood of torture, the agency considers, among other evidence, the applicant's past torture, evidence that the applicant could avoid torture by relocating within the country of removal, and country conditions evidence. *Id.* § 1208.16(c)(3). We review legal challenges to the agency's denial of CAT relief *de novo* and factual challenges for substantial evidence. *See Manning v. Barr*, 954 F.3d 477, 484 (2d Cir. 2020). Under the substantial-evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (internal quotation marks omitted).

4

Mbendeke asserts that the agency mischaracterized the testimony of her expert witness, Dr. Charlotte Walker-Said, when the IJ stated that Dr. Walker-Said testified "it was not more likely than not that respondent would be tortured if returned to Cameroon." Certified Administrative Record ("CAR") at 64. We detect no error here because the IJ did not purport to quote Dr. Walker-Said in drawing this conclusion from her testimony, and substantial evidence supported the conclusion itself. Mbendeke, who now identifies as transgender, asserted throughout her application that she would be subject to torture in Cameroon on account of her status as a gay and HIV-positive man. Given the absence of any specific threats against Mbendeke, her petition relied on population-level risks. In particular, Dr. Walker-Said testified that over the prior seven or eight years, 35 to 45 individuals had been "detained and arrested" for being homosexual in Cameroon. *Id.* at 197. When asked whether it was more likely than not that Mbendeke would be tortured if removed to Cameroon, Dr. Walker-Said refused to answer "yes" and instead asserted that there is "a likelihood, a strong likelihood" of torture. *Id.* at 212. When pressed further on the question, she responded, "I cannot say with certainty, no." *Id.* at 214. A reasonable adjudicator could glean from this reticence on the part of Mbendeke's expert that the chance of Mbendeke being tortured in Cameroon—while non-trivial—was not more likely than not.

Mbendeke also asserts that the agency failed to take account of several facts suggesting individualized risks of torture by her family and community. But the agency considered these facts and simply found that Mbendeke had not overcome her evidentiary burden. For example, the IJ acknowledged that Mbendeke had been tortured by her (now-deceased) stepfather as an adolescent when he tied her up and poured boiling water on her, but reasonably concluded that this did not show a risk of future torture because these events occurred when Mbendeke was young and she is now an adult. "Past torture does not give rise to a presumption of future torture. Rather,

it serves as evidence of the *possibility* of future torture." *Suzhen Meng v. Holder*, 770 F.3d 1071, 1076 (2d Cir. 2014). Mbendeke did not meet her burden of showing that possibility was a probability given the IJ's finding that she had "four or five homosexual relationships while living in Cameroon, and [her] wife and pastor were aware of them at the time, but [she] was never arrested, detained, or otherwise harmed for [those] relationships." CAR at 64. Likewise, Mbendeke points to allegedly coercive efforts to change her sexual orientation through conversion therapy as evidence that the IJ incorrectly stated that she "lived unharmed in Cameroon" from 1994 to 2012, but she does not argue that conversion therapy rises to the level of torture. Finally, contrary to Mbendeke's argument, the BIA acknowledged that her status as an "outed" homosexual increased her individual risk of being tortured. Despite the fact that she had been outed, the BIA reasonably concluded that "the possibility of the respondent facing harm that rises to the level of torture is still speculative." *Id.* at 5. Given that Mbendeke failed to offer evidence showing that torture of homosexuals is widespread in Cameroon, substantial evidence supports the conclusion that Mbendeke's elevated risk of torture does not rise to the level sufficient to confer Convention Against Torture relief.

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court