Lopez Lopez v. Garland

BIA
Conroy, IJ
A215 929 216

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of April, two thousand twenty-four.

PRESENT:
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

JEREMIAS LOPEZ LOPEZ,
> *Petitioner,*

v.                                                    **22-6206**
                                                      **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:              Nhu-Y Ngo, Zoe Levine, The Bronx
                             Defenders, Bronx, NY.

**FOR RESPONDENT:** Brian Boynton, Assistant Attorney General; Shelley R. Goad, Assistant Director; Tim Ramnitz, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Jeremias Lopez Lopez, a native and citizen of Guatemala, seeks review of an April 20, 2022, decision of the BIA affirming a November 29, 2021, decision of an Immigration Judge ("IJ") denying his application for withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Jeremias Lopez Lopez*, No. A215 929 216 (B.I.A. Apr. 20, 2022), *aff'g* No. A215 929 216 (Immig. Ct. N.Y.City Nov. 29, 2021). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances, we review the IJ's decision as modified by the BIA and do not address the arguments for denying relief the BIA rejected or did not address. *See Urgen v. Holder*, 768 F.3d 269, 272 (2d Cir. 2014). We review factual findings for substantial evidence and questions of law and application of law to facts *de novo*. *See Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022). "[T]he

2

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## A. Withholding of Removal: Particularly Serious Crime Bar

The agency did not err in concluding that Lopez's conviction for attempted second-degree rape in violation of New York Penal Law ("NYPL") §§ 110.00, 130.30(1) was a particularly serious crime that barred him from withholding of removal. Withholding of removal, under either 8 U.S.C. § 1231(b)(3)(A) or the CAT, is unavailable if an "alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community." 8 U.S.C. § 1231(b)(3)(B)(ii); 8 C.F.R. § 1208.16(d)(2). In determining if a conviction constitutes a particularly serious crime, the agency applies a two-step analysis. *Ojo*, 25 F.4th at 165. "First, the adjudicator considers whether the elements of the offense 'potentially bring the crime into a category of particularly serious crimes.'" *Id.* (quoting *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (B.I.A. 2007)). "If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal." *Id.* (quoting *In re N-A-M-*, 24 I. & N. Dec. at 342). "However, 'once

3

the elements of the offense are examined and found to potentially bring the offense within the ambit of a particularly serious crime, all reliable information may be considered in making a particularly serious crime determination, including the conviction records and sentencing information.'"  *Id.* (quoting *In re N-A-M-*, 24 I. & N. Dec. at 342).  To make such a determination, the agency considers "the nature of the conviction," "the circumstances and underlying facts of the conviction," "the type of sentence imposed," and "whether the type and circumstances of the crime indicate that the alien will be a danger to the community."  *Nethagani v. Mukasey*, 532 F.3d 150, 155 (2d Cir. 2008) (internal quotation marks omitted) (quoting *In re Frentescu*, 18 I. & N. Dec. 244, 247 (B.I.A. 1982), *modified*, *In re C-*, 20 I. & N. Dec. 529 (B.I.A. 1992)).

Lopez's statute of conviction provides that "[a] person is guilty of rape in the second degree when . . . being eighteen years old or more, he or she engages in sexual intercourse with another person less than fifteen years old."  NYPL § 130.30(1).  The IJ reasonably found that the elements of § 130.30(1) potentially fell within the ambit of a particularly serious crime because sexual intercourse with someone who cannot or is unable to consent is a serious crime and sexual crimes against children are crimes against a particularly vulnerable group of

4

persons.

There is no merit to Lopez's argument that the elements of his statute of conviction do not potentially bring it within the ambit of a particularly serious crime because it is a strict liability offense. Lopez appears to conflate the requirement that crimes involving moral turpitude involve a culpable mental state with the particularly serious crime analysis, but there is no such requirement in determining that an offense is potentially particularly serious. *See Ojo*, 25 F.4th at 165 (outlining particularly serious crime analysis). Further, although NYPL § 130.30(1) is a strict liability crime "with regard to the age of the victim," meaning mistake of age is no defense, *People v. Mormile*, 812 N.Y.S.2d 524, 525 (App. Div. 2006), Lopez could not realistically be convicted "with a less than 'knowing' *mens rea* as to the conduct involved," *Acevedo v. Barr*, 943 F.3d 619, 626 (2d Cir. 2019).

Having reasonably concluded that NYPL § 130.30(1) is *potentially* a particularly serious crime, the IJ next considered the nature of the conviction, the circumstances and underlying facts of the conviction, and the type of sentence imposed and reasonably concluded that Lopez's conviction was a particularly serious crime. *See Nethagani*, 532 F.3d at 155. First, the agency reasonably noted that the nature of Lopez's conviction was particularly serious because second-

degree rape is a crime against a particularly vulnerable population of persons, namely children. *See id.* ("[C]rimes against persons are more likely to be particularly serious than are crimes against property.").

Second, in considering the facts and circumstances underlying Lopez's conviction, the agency reasonably looked to the indictment and concluded that the age of the victim rendered his conviction serious. *See In re N-A-M-*, 24 I. & N. Dec. at 342 (providing that the agency may consider the "conviction records and sentencing information, as well as other information outside the confines of a record of conviction"). The agency was not compelled to credit Lopez's self-serving testimony regarding the age of his victim and his knowledge of her age, especially because it conflicted with his indictment and guilty plea. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted) (citation omitted)).

Third, the agency reasonably considered the sentence imposed—almost a year of imprisonment and an eight-year protection order—as evidence of the seriousness of his crime. *See Nethagani*, 532 F.3d at 155 (upholding particularly

6

serious crime determination where noncitizen was sentenced to several months in prison and five years of probation). Finally, in considering whether Lopez would pose a danger to the community, the agency reasonably noted that his conduct had harmed a child and that Lopez himself testified to continuing the relationship even after learning that she was a minor.

Contrary to Lopez's argument, the agency did not err in failing to explicitly discuss a psychosexual risk evaluation that found him to pose a low risk to the community. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) (declining to require IJs to "parse or refute on the record" all arguments and "presum[ing] that an IJ has taken into account all of the evidence [in the record], unless the record compellingly suggests otherwise"). And even if the agency did err by failing to expressly consider this evidence, in light of the IJ's analysis as discussed above and the nature of the evaluation itself, we see no reason to believe that the agency would reach a different result on remand. *See id.* at 338.

For these reasons, the agency did not err in concluding that Lopez's attempted second-degree rape conviction was a particularly serious crime barring withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(B)(ii); *Nethagani*, 532 F.3d at 155. Accordingly, we do not reach the agency's alternative analysis of Lopez's

7

proposed social groups.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

**B. CAT Deferral of Removal: Likelihood of Torture**

An applicant for CAT relief must show both that he is "more likely than not" to be harmed (*i.e.*, subjected to "severe pain or suffering"), and that a government actor will inflict, instigate, or acquiesce in that harm.  *Garcia-Aranda v. Garland*, 53 F.4th 752, 758–59 (2d Cir. 2022) (setting out the "two-step inquiry" under 8 C.F.R. § 1208.18(a)) (internal quotation marks omitted); *see* 8 C.F.R. §§ 1208.16(c)(2), 1208.17(a).  The agency reasonably concluded that Lopez's fears of torture were speculative.

First, Lopez alleged that members of his community in Guatemala would harm him on account of his father's involvement and presidency in the local Community Development Council ("COCODE") from 2007 to 2019.  The agency reasonably found that claim speculative, in part because Lopez's seven siblings live in the family's hometown and have never been harmed on account of their father's involvement in the COCODE.  *See Melgar de Torres v. Reno*, 191 F.3d 307, 313 (2d Cir. 1999) (upholding finding that an applicant's claimed fear of future

8

harm was weakened by fact that similarly situated family members continued to live unharmed in petitioner's native country). Contrary to Lopez's contention, the agency did not ignore testimony regarding recent threats to his family. Threats his family received when he was a child were not recent. And while Lopez testified that his family received threats before a cousin who served as the COCODE's secretary was murdered in 2021, he gave no details about the threats, such as who made them, whom they were made against, or when they were made. Moreover, as the IJ pointed out, his cousin was involved in COCODE, while he and his siblings who remained unharmed were not. Lopez's fear was thus too speculative absent evidence that he or his immediate family was threatened or harmed because of his father's involvement in a COCODE. *See Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

Second, the agency did not err in finding speculative Lopez's claim that his ex-girlfriend's father would harm him in Guatemala (or have someone do so given that the father lives in the United States). Lopez testified that the father is known to be aggressive; the father's family is involved in criminal activity in Guatemala; the father once told a mutual friend that he wanted to hit Lopez for telling his

9

daughter to study rather than work; and according to his ex-girlfriend, her father had threatened to kill her sisters' ex-boyfriends and would want to kill Lopez if he left her. Lopez admitted that he did not know if his ex-girlfriend's father had hurt any of his daughters' ex-boyfriends. On this record, the agency reasonably concluded that this fear was speculative as it was based on indirect threats and there was no attempt to harm Lopez or others. *See Jian Xing Huang*, 421 F.3d at 129; *cf. Gui Ci Pan v. U.S. Att'y Gen.*, 449 F.3d 408, 412–13 (2d Cir. 2006) (noting that courts have "rejected [persecution] claims involving 'unfulfilled' threats"). Contrary to Lopez's contention, the agency did not err by failing to explicitly consider an affidavit from a co-worker who claimed that the father was aggressive and had asked about Lopez's parents. The affidavit was not materially different from the other evidence and did not state that the father had threatened Lopez. *See Xiao Ji Chen*, 471 F.3d at 336 n.17.

Third, the agency reasonably found speculative Lopez's claim that he would be subject to vigilante violence in Guatemala as a result of his conviction in the United States. The agency recognized that there is some evidence that vigilante violence is a problem in Guatemala, but concluded that Lopez had not identified any threats or specific facts suggesting that he will be harmed upon his return. In

10

particular, the IJ noted that Lopez testified that members of his community in Guatemala knew about his conviction and had spoken negatively about him, but he did not allege that anyone had threatened him.

Although Lopez argues that CAT claims "must be considered in terms of the aggregate risk of torture from all sources, and not as separate, divisible . . . claims," Pet'r Br. at 36 (quoting *Matter of J-R-G-P-*, 27 I. & N. Dec. 482, 484 (B.I.A. 2018) (alteration in original) (internal quotation marks omitted) (citation omitted)), the agency was not required to perform an aggregate analysis in his case because each of his claims was speculative and thus there were no risks to analyze in the aggregate. Because the agency did not err in finding that Lopez failed to establish a likelihood of harm, we need not reach the agency's alternative determination that he failed to demonstrate that Guatemalan officials would acquiesce in that harm. *See Bagamasbad*, 429 U.S. at 25.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

11