07-5791-ag
Lin v. Holder

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: May 21, 2009      Decided: October 14, 2009)

Docket No. 07-5791-ag

- - - - - - - - - - - - - - - - - - - - - -X

YAN YAN LIN,
         Petitioner,

          -v.-                                        07-5791-ag

ERIC H. HOLDER, JR., DEPARTMENT OF
HOMELAND SECURITY,
         Respondents.[*]

- - - - - - - - - - - - - - - - - - - - - -X

Before:        JACOBS, Chief Judge, KEARSE, and STRAUB,
               Circuit Judges.

     Yan Yan Lin, a native and citizen of China, petitions

_____

     [*] Pursuant to Federal Rule of Appellate Procedure
43(c)(2), Attorney General Eric H. Holder, Jr. is
automatically substituted for Michael B. Mukasey.

for review of a final order of the Board of Immigration Appeals affirming the decision of an Immigration Judge which denied her application for asylum, withholding of removal, and withholding under the Convention Against Torture.  The petition was denied primarily on the ground that Lin "assisted or participated" in the persecution of others by serving as a nurse in the maternity ward of a hospital which performed forced abortions and that she was therefore subject to the statutory "persecutor bar" of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(42), 1158(b)(2)(A)(i), 1231(b)(3)(B)(i).  The petition is granted in part, denied in part, and remanded.

STUART ALTMAN, Law Offices of Stuart Altman, New York, New York, for Petitioner.

STACY STIFFEL PADDACK, (Anthony Norwood, Sherrie Waldrup, on the brief), Office of Immigration Litigation, for Gregory G. Katsas, Assistant Attorney General, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

DENNIS JACOBS, Chief Judge:

Petitioner Yan Yan Lin ("Lin" or "Petitioner"), a

native and citizen of the People's Republic of China, seeks review of the December 17, 2007 order of the Board of Immigration Appeals ("BIA") affirming the January 24, 2006 decision of Immigration Judge ("IJ") Vivienne E. Gordon-Uruakpa denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In re Yan Yan Lin, No. A95 709 889 (B.I.A. Dec. 17, 2007), aff'g No. A95 709 889 (Immig. Ct. N.Y. City, Jan. 24, 2006). Lin was a maternity nurse employed by a state general hospital that (sometimes) performed forced abortions pursuant to China's family planning policy. The IJ denied relief (in part) on the ground that Lin was therefore a "persecutor" and statutorily ineligible for asylum or withholding of removal under the Immigration and Nationality Act ("INA"). See 8 U.S.C. §§ 1101(a)(42), 1158(b)(2)(A)(i), 1231(b)(3)(B)(i). The IJ also denied Lin's request for CAT protection because Lin failed to demonstrate that it was "more likely than not" that she would be tortured if removed to China. See 8 C.F.R. § 208.16(c)(2). The BIA affirmed the IJ's decision and dismissed the appeal. This petition

3

for review followed.

The main issue on appeal is whether Lin's activity as a nurse in China amounted to "assistance or participation" in persecution which would render her ineligible for asylum or withholding of removal under the INA's "persecutor bar." We conclude that it did not.

I

The facts bearing on this appeal are based on Lin's testimony, which was found to be credible.

From 2002 to 2005, Lin was employed in the obstetrics and gynecology department of the state-run "People's Number One Hospital" in China. Her duties included, among other things, tending to pregnant women, assisting in the performance of ultrasound and other prenatal examinations, participating in live-birth deliveries, caring for newborns, and providing recovery care to women who had undergone forced abortions. Lin did not participate in the abortion procedure itself, but the examinations in which Lin assisted were sometimes used to determine a fetus's position so that a forced abortion could be performed without threatening the

4

life of the mother.

In July 2004, a woman Lin knew arrived at the hospital escorted by family planning authorities. The woman was five months pregnant and was scheduled to undergo a forced abortion in accordance with China's family planning policy. A pre-abortion examination at which Lin assisted revealed a complication that would delay the procedure for two days. During the delay, Lin found the woman crying in her room; the woman stated that she wished to bear the child, and wanted Lin's help avoiding the abortion. At around one o'clock in the morning, after Lin's shift ended and the person guarding the woman's room had fallen asleep, Lin opened a side door of the hospital and the woman escaped by motorcycle with her husband, whom Lin had alerted to come to the hospital. Questioned the next day, Lin denied any knowledge of the escape.

Seven months later, in February 2005, a doctor and several family planning officials came to Lin's house to question her again about the incident. (They apparently learned of her involvement after interrogating the woman who

5

had escaped.)  Lin was not home at the time, but was warned of the visit and fled to her aunt's house, where she learned that she had been dismissed from the hospital and that officials continued to search for her.  So she decided to leave China.

Lin arrived in Los Angeles on March 27, 2005 without valid entry documents, and applied for admission.  Lin was taken into custody and served with a notice to appear, charging her with being subject to removal for her failure to possess valid travel documents under section 212(a)(7)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I).  Thereafter, Lin was released from custody, paroled into the United States, and notified of the date for her removal hearings.

On June 23, 2005, Lin appeared with counsel before the IJ and admitted that she lacked proper documentation, but filed an application for asylum, withholding of removal, and withholding under the Convention Against Torture.  Lin admitted that she had never been arrested, detained, or physically mistreated in China, but alleged fear of

persecution for her resistance to China's family planning policy.

Following a January 24, 2006 hearing on the merits, the IJ found that Lin had "for the most part been a credible witness." Relying on Lin's testimony, the IJ found that she had "participated in the persecution of other individuals on account of their political opinion" and concluded that she was therefore "statutorily barred from the relief of asylum and [w]ithholding of [r]emoval" under the INA provisions barring relief for individuals who themselves engaged in the persecution of others. See 8 U.S.C. §§ 1101(a)(42), 1158(b)(2)(A)(i), 1231(b)(3)(B)(i). The finding was based on the grounds that: (i) Lin knew that several of the women she assisted in examining were scheduled to undergo forced abortions (because they were escorted to the hospital by uniformed cadre and guarded during their stay), (ii) Lin's assistance to doctors in the examinations provided a "necessary step for the involuntary abortion," and (iii) Lin's actions "further[ed] the persecution of these women." The IJ also determined that Lin "failed to demonstrate that

7

it [was] more likely than not that she would be tortured . . . [if] removed to China." Accordingly, the IJ denied her applications for asylum and withholding of removal, and her request for CAT protection, and ordered her removed from the United States to China.

The BIA dismissed Lin's appeal on December 17, 2007, concluding that Lin failed to show by a preponderance of the evidence "that she did not assist doctors in carrying out forced abortions," and could not demonstrate that her actions were only "tangential" to the procedure. Instead, the BIA concluded that Lin's conduct "as a whole" was "active and contributed directly to the persecution of others." The BIA acknowledged that Lin helped one woman escape a forced abortion, but decided that this "redemptive behavior . . . [did] not serve as a basis for relieving the respondent of the consequences of having previously assisted in persecution." As to the CAT claim, the BIA agreed with the IJ that Lin failed to demonstrate eligibility for CAT protection because she conceded that she had never been arrested, detained, or physically mistreated in China, and

8

she presented no other evidence to indicate that if she were returned to China, she would be tortured. Accordingly, the BIA dismissed Lin's appeal in its entirety.

**II**

We review the BIA's factual findings under the "substantial evidence" standard, and uphold them "if they are supported by 'reasonable, substantial and probative evidence in the record.'" Weng v. Holder, 562 F.3d 510, 513 (2d Cir. 2009) ("Weng") (quoting Lin Zhong v. U.S. Dep't of Justice, 480 F.3d 104, 116 (2d Cir. 2007)). The BIA's application of law to fact is reviewed de novo. Id.

Where "the BIA did not expressly 'adopt' the IJ's decision, but its brief opinion closely tracks the IJ's reasoning," we consider in the interest of completeness both the IJ and BIA opinions, especially where doing so does not affect the outcome. Wangchuck v. Dep't of Homeland Sec., 448 F.3d 524, 528 (2d Cir. 2006).

**III**

The Secretary of Homeland Security or the Attorney General may grant asylum to an alien determined to be a

"refugee" within the meaning of the INA. 8 U.S.C. § 1158(b)(1)(A). The INA defines a "refugee" as a person "who is unable or unwilling to return to . . . [a] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Excluded from that definition is "any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." Id.; see also 8 U.S.C. § 1158(b)(2)(A)(i). This exclusion, the so-called "persecutor bar," prevents those who have persecuted others (or assisted or participated in the persecution of others) from gaining refugee status and seeking asylum in the United States. See 8 U.S.C. § 1231(b)(3)(B)(i); Negusie v. Holder, 129 S. Ct. 1159, 1162 (2009); Weng, 562 F.3d at 513-14. The bar also applies to those seeking withholding of removal, see 8 U.S.C. § 1231(b)(3)(B)(i), but "[i]t does not disqualify an alien from receiving a temporary deferral of

10

removal under the Convention Against Torture." Negusie, 129 S. Ct. at 1162; see also 8 C.F.R. § 208.17(a).

In this Circuit, four relevant factors determine whether the persecutor bar applies to a particular alien: (1) whether the alien was "involved in" acts of persecution by ordering, inciting, or actively carrying out the acts; (2) whether there is a nexus between the persecution and the victim's race, religion, nationality, membership in a particular social group, or political opinion; (3) whether the alien's actions, if not outright "involvement" under the first factor, amount to assistance or participation in persecution; and (4) whether the alien had sufficient knowledge that her actions might assist in persecution to make those actions culpable. See Weng, 562 F.3d at 514; Balachova v. Mukasey, 547 F.3d 374, 384-85 (2d Cir. 2008). For the persecutor bar to apply, an alien's conduct must be persecution under either the first or third factors, and must also satisfy the second and fourth factors. In short, Lin is a persecutor if she knowingly did or assisted acts that would be persecution on account of the victim's

11

victim's race, religion, nationality, membership in a particular social group, or political opinion.

It is settled law that forced abortion is persecution on account of political opinion. See 8 U.S.C. § 1101(a)(42) (see text in the margin[1]). And knowledge is not an issue in this case. The critical question, then, is whether Lin did or assisted acts of persecution. It is undisputed that Lin did not order, incite, or actively carry out the forced abortions; so Lin's conduct does not amount to "involvement" under the first factor. See Balachova, 547 F.3d at 384. Our focus therefore is on whether Lin "assisted or participated" in persecution under the third factor.

"In determining whether . . . conduct amounts to 'assistance' in persecution, we look to [the alien's]

---

[1] "[A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure . . . shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42); see also Weng, 562 F.3d at 514.

12

behavior as a whole." Weng, 562 F.3d at 514. "Where the [alien's] conduct [is] active and [has] direct consequences for the victims . . . it [is] 'assistance in persecution.' Where the conduct [is] tangential to the acts of oppression and passive in nature, however, we decline[] to hold that it amount[s] to such assistance." Zhang Jian Xie v. INS, 434 F.3d 136, 143 (2d Cir. 2006) ("Xie").

Two cases, Xie and Weng, discuss forced abortion practices in this context and illustrate conduct that amounts to persecution and conduct that does not. Weng, 562 F.3d at 514-15; Xie, 434 F.3d at 143. Lin's case falls in a zone between the events and behaviors described in those decisions.

In Xie, the petitioner worked as a driver for the county health department in China. Among other duties, he occasionally "transported pregnant women to hospitals in the locked back of a van, against their will, so that county officials could perform forced abortions on them pursuant to China's mandatory family planning policies." 434 F.3d at 138. We agreed with the BIA's conclusion that the

13

petitioner was subject to the persecutor bar because his actions "contributed directly" to the persecution: "[b]y driving the van in which the women were locked, Xie ensured that they were delivered to the place of their persecution. . . . [He] played an active and direct, if arguably minor, role." Id. at 143. We rejected Xie's argument that his actions were involuntary, and therefore excusable, in the sense that they were required by his job because "nothing in the record indicate[d] that Xie did not have the ability to quit his job as a driver at any time in order to avoid the persecution of women." Id. We also rejected Xie's argument that his petition should have been saved by a redemptive act (he once allowed an unguarded pregnant woman he was transporting to go free after she pleaded with him). We explained that "redemptive behavior is [not] necessarily irrelevant to the inquiry as to whether an applicant has assisted in persecution," but "the BIA was not in error" when it determined that Xie was ineligible for asylum. Id. at 144.

In Weng, the petitioner worked as a nurse's assistant

at a public hospital in China.  562 F.3d at 512.  She performed administrative tasks such as registration of patients and maintenance of files, but she also provided post-surgical care, including the taking of temperature and the recording of vital signs.  Id. at 512, 515.  On one occasion, Weng "guarded" women scheduled for forced abortions by sitting outside the locked door of her regular shift room while the women waited inside.  Id. at 515.  On that evening, Weng helped one of the women to escape the hospital before the procedure.  Id. at 512-13, 515.

In deciding whether Weng had provided "assistance" in persecution, we observed that the Supreme Court, deciding the same question, had "easily distinguished between the conduct of a concentration camp barber who did not assist persecution and that of armed guards who did."  Id. at 515 (citing Fedorenko v. United States, 449 U.S. 490, 512 n.34 (1981)).  Nevertheless, the case law "offered scant guidance on how to classify less overtly culpable conduct."  Id.

We decided in Weng that the "post-surgical care did not contribute to, or facilitate, the victims' forced abortions

15

in any 'direct' or 'active' way [because] [Weng's] conduct neither caused the abortions, nor made it easier or more likely that they would occur[;] [the] actions were, at most, 'tangential,' 'passive accommodation' of the conduct of others" and did not trigger the persecutor bar. Id. As to the single incident where Weng "guarded" forced abortion patients, the Court observed that "guarding patients awaiting forced abortions comes closer to active assistance than does post-operative monitoring of vital signs," but that Weng "was unarmed, . . . performed actual guard duties for only approximately ten minutes before accompanying one of the patients to the restroom, . . . helped one of the patients to escape, and . . . lost her job as a result." Id. Under those circumstances, the Court concluded that "Weng's conduct, considered in its entirety, was tangential, and not sufficiently direct, active, or integral to the administering of forced abortions as to amount to assistance in persecution." Id.

Lin's case is closer to Weng than to Xie. Lin did not participate directly in forced abortions, and the following

16

circumstances are decisive:

1. Lin assisted examinations in the maternity ward that were used to detect the position and health of the fetus. The kinds of examinations in which Lin assisted (e.g., ultrasounds) are given to all pregnant women, whether the pregnancy is scheduled to result in a live birth, a voluntary abortion, or a forced abortion. The exams are more akin to routine patient care than a protocol specific to forced abortions.

2. As in Weng, the examinations in which Lin assisted "did not contribute to, or facilitate, the victims' forced abortions in any 'direct' or 'active' way" because they did not "cause[] the abortions, nor [did they make] it . . . more likely that they would occur." Id. Lin's actions were therefore "tangential, and not sufficiently direct, active, or integral to the administering of forced abortions as to amount to assistance in persecution." Id.

Our conclusion is further bolstered by Lin's redemptive act. Although the act itself is not dispositive, we must view Lin's conduct "as a whole," id., and the act suggests

17

that she did not actively "assist" or participate in persecution. We conclude as a matter of law that Lin's conduct does not subject her to the persecutor bar. We grant Lin's petition with respect to the BIA's denial of her applications for asylum and withholding of removal, and remand for the BIA to determine, in the first instance, if Lin is eligible for such relief.

(A) The CAT Determination

In order to establish eligibility for CAT withholding, the petitioner must demonstrate that she will "more likely than not" be tortured if removed to her home country. See 8 C.F.R. § 208.16(c)(2). Here, the IJ and the BIA concluded that Lin failed to sustain her burden of demonstrating that it was "more likely than not" that she would be tortured in China because she affirmatively testified that she had never been arrested, detained, or physically mistreated in her home country. We see no error in this conclusion and deny Lin's petition for review on this ground.

**CONCLUSION**

For the foregoing reasons, Lin's petition for review is

18

granted as to her applications for asylum and withholding of removal, and denied as to withholding of removal under CAT; the petition is remanded to the BIA for further proceedings consistent with this opinion.