12-2258-ag
Meng v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: August 26, 2014     Decided: November 3, 2014)

Docket No. 12-2258-ag

SUZHEN MENG,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

Before:

WINTER, RAGGI, CARNEY, *Circuit Judges.*

Petition for review of a Board of Immigration Appeals decision upholding an order of removal and the denial of (1) asylum and withholding of removal on the ground that the statutory "persecutor bar" precluded such relief given petitioner's two-decade history of reporting women pregnant in violation of

China's family planning policy to local authorities, knowing that many such women would then be subject to forcible abortions or involuntary sterilizations; and (2) relief pursuant to the Convention Against Torture because petitioner failed to establish that it was more likely than not that she would be tortured if returned to China.

Petition for review DENIED.

─────────────

GARY J. YERMAN, The Yerman Group, LLC, New York, New York, *for Petitioner*.

ALISON MARIE IGOE, Senior Counsel (Stuart F. Delery, Principal Deputy Assistant Attorney General; Lyle Jentzer, Senior Counsel, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, D.C., *for Respondent*.

─────────────

REENA RAGGI, *Circuit Judge*:

Petitioner Suzhen Meng is a native and citizen of the People's Republic of China who seeks asylum, withholding of removal, and relief pursuant to the Convention Against Torture ("CAT") based on past political persecution in China, which she claims to have experienced because, as a local public security officer, she refused to collect security fees and reported police corruption. Meng now petitions this court for review of the May 9, 2012 decision of the Board of

2

Immigration Appeals ("BIA") upholding the April 22, 2010 decision of Immigration Judge ("IJ") Javier E. Balasquide, which denied Meng such relief and ordered her removal from the United States. See In re Suzhen Meng, No. A089 224 906 (B.I.A. May 9, 2012), aff'g No. A089 224 906 (Immig. Ct. N.Y.C. Apr. 22, 2010).

Meng contends that the agency erred in concluding that the statutory "persecutor bar" rendered her ineligible for asylum and withholding of removal. See 8 U.S.C. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i). She maintains that her actions as a public security officer, specifically, her reporting women pregnant in violation of China's family planning limitations to local authorities, were insufficient as a matter of law to constitute "assistance" in persecution. Meng also challenges the agency's finding that she failed to carry her burden for CAT relief.

For the reasons explained in this opinion, we identify no error in the agency's rulings and, accordingly, we deny the petition for review.

## I. **Background**

### A. Meng's Application for Relief

On February 25, 2008, Meng was admitted to the United States as a non-immigrant visitor with authorization to remain for six months. Five months later, on July 24, 2008, Meng filed for asylum, withholding of removal, and CAT

relief, stating that she had suffered past political persecution when, as a public security officer in her local community, she refused to collect a security fee from residents and wrote a letter to the local public security bureau alleging that the police chief was corrupt. Meng asserted that, as a result of these actions, her passport was confiscated and she was arrested and held in custody for 14 days, during which time a guard slapped her in the face several times and fellow prisoners beat her on instruction of the guards. Ten months later, Meng's passport was returned when she promised not to engage in any further anti-government activities, whereupon she left China.

B. Meng's Immigration Hearing

On September 16, 2008, Meng was charged as subject to removal for having overstayed her visa. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). At an October 1, 2009 hearing before the IJ, Meng pursued her claim for relief from removal by testifying to the persecution alleged in her application. She also testified to her job responsibilities as a public security officer, a position she had held for 22 years. Meng stated that, in that capacity, she oversaw approximately 1,100 households, and that her duties included reporting all pregnant women to China's family planning office, including women pregnant in violation of state

4

limitations. Meng understood that when she reported a policy-violating woman to authorities, that woman would be punished, typically by being forced to undergo an abortion or sterilization. Indeed, she testified to having seen such women dragged away forcibly by the police. Nevertheless, Meng voluntarily continued to serve as a security officer and to make her reports, although she sometimes advised women whom she would report as being pregnant in violation of family planning policy to go into hiding or to flee.

C. Denial of Relief

On April 22, 2010, the IJ denied Meng's application for relief and ordered her removed. Although the IJ found Meng credible, he ruled that her active assistance in the persecution of women pregnant in violation of China's family planning policy barred her from receiving asylum or withholding of removal. The IJ further denied Meng CAT relief, concluding that she had failed to show that it was more likely than not that she would be tortured if returned to China.

The BIA essentially agreed with the IJ and dismissed Meng's appeal, prompting this petition for review.

5

## II.    Discussion

### A.    Standard of Review

On a petition for review of a BIA decision, we apply the deferential substantial-evidence standard to the agency's findings of fact, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); see Shunfu Li v. Mukasey, 529 F.3d 141, 146 (2d Cir. 2008).  We apply de novo review, however, to questions of law, including whether an alien's conduct could render her a "persecutor" as that term is statutorily defined.  See 8 U.S.C. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i); Yanqin Weng v. Holder, 562 F.3d 510, 513 (2d Cir. 2009).

Where, as here, the BIA upholds the IJ's decision and "closely tracks the IJ's reasoning, this Court may consider both the IJ's and the BIA's opinions for the sake of completeness."  Maldonado v. Holder, 763 F.3d 155, 158–59 (2d Cir. 2014).

### B.    Asylum and Withholding of Removal:  The "Persecutor Bar"

Asylum is a form of discretionary relief that allows an otherwise removable alien to remain and work in the United States if she demonstrates that she is a "refugee," i.e., an alien who "is unable or unwilling to return to, and is

6

unable or unwilling to avail . . . herself of the protection of, [her native] country because of [past] persecution or a well founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  See 8 U.S.C. §§ 1101(a), 1158(b)(1)(A), (b)(3), (c)(1); 8 C.F.R. §§ 1208.13(b),  1208.21; Mei Fun Wong v. Holder, 633 F.3d 64, 68 (2d Cir. 2011). Withholding of removal, meanwhile, is a form of mandatory relief that prevents the removal of an alien to a country where "the alien's life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3).

Both forms of relief are subject to a statutory "persecutor bar," which renders an alien ineligible for either asylum or withholding if she has "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion."  Id. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i); see Xu Sheng Gao v. U.S. Att'y Gen., 500 F.3d 93, 97–98 (2d Cir. 2007).  This court has identified four factors relevant to determining when this persecutor bar applies:  (1) "the alien must have been involved in acts of persecution"; (2) a "nexus must be shown between the persecution and the victim's race, religion, nationality, membership

7

in a particular social group, or political opinion"; (3) if the alien "did not [herself] incite, order, or actively carry out" the persecution, her conduct "must have assisted the persecution"; and (4) the alien must have had "sufficient knowledge that . . . her actions may assist in persecution to make those actions culpable." Balachova v. Mukasey, 547 F.3d 374, 384–85 (2d Cir. 2008) (internal quotation marks omitted). Where evidence indicates that an alien assisted in persecution, the alien seeking relief from removal bears "the burden of proving by a preponderance of the evidence" that she "did not so act." 8 C.F.R. § 208.13(c); see Zhang Jian Xie v. INS, 434 F.3d 136, 139 (2d Cir. 2006).

Here, the IJ and BIA concluded that Meng had assisted in the persecution of women who became pregnant in violation of China's family planning policy because, in her role as a public security officer, she had reported such women to Chinese authorities for more than two decades knowing that, as a result, any number of these women would be subjected to forced abortions or sterilizations. Meng does not—and cannot—dispute that forced abortions and involuntarily sterilizations constitute persecution on a protected ground; they are statutorily defined as such. See 8 U.S.C. § 1101(a)(42); Yan Yan Lin v. Holder, 584 F.3d 75, 80 (2d Cir. 2009) ("It is settled law that forced abortion is persecution on account

8

of political opinion."). Nor does she dispute that women in her community who became pregnant in violation of family planning policy were subjected to such persecution. Instead, Meng contends that the record evidence was insufficient as a matter of law to admit a finding that she "assisted" in such persecution. She maintains that her actions in registering and reporting unauthorized pregnancies were merely tangential, passive accommodations of the persecutory conduct of Chinese family planning authorities, which Zhang Jian Xie v. INS, 434 F.3d at 143, holds is not enough to constitute assistance in persecution. See also Xu Sheng Gao v. U.S. Att'y Gen., 500 F.3d at 99–100 (holding mere association with persecutory enterprise insufficient to trigger persecutor bar). Indeed, Meng argues that Xu Sheng Gao requires evidence that one of her reports led to a specific forced abortion or involuntary sterilization to admit a finding of assistance. See id. In fact, the cited precedents do not support Meng's arguments.

In Zhang Jian Xie, at the same time that this court observed that conduct "passive in nature" and "tangential" to third-party acts of oppression is insufficient to manifest "assistance," we stated that "active" conduct, having "direct consequences for the victims," can constitute "assistance in persecution."

9

434 F.3d at 143. Here, Meng's conduct was clearly active and not passive. She affirmatively identified pregnant women in her community, including those pregnant in violation of China's family planning policy, and she deliberately reported these women to authorities. Nor was she merely associated with a persecutory enterprise. She was integral to the effectuation of persecution. Meng's reporting of policy-violating women was no "minor" action, but the critical step that set in motion the entire persecutory scheme of enforcement. Cf. id. (upholding agency's imposition of persecutor bar even though petitioner's assistance was "arguably minor"). Indeed, without Meng's reports, authorities would not have known which women had violated family planning policy. Moreover, Meng's actions had direct consequences for the victims insofar as her reports were the basis for women being subjected to forced abortions and sterilizations. Meng not only admitted knowing that her conduct had this effect; she testified that it was the reason she sometimes urged the women whom she reported to hide or flee. Nevertheless, with knowledge that her conduct triggered persecution, Meng voluntarily continued to serve for more than two decades as a public security officer and to report women for unauthorized pregnancies. This record was sufficient to admit the agency finding that Meng

10

assisted in persecution. See In re Suzhen Meng, No. 089 224 906, at 2 (finding that "as a result of [Meng's] actions, the Family Planning officials went to women's homes who had illegal pregnancies, seized them, and subjected them to forced abortions and sterilizations").

Xu Sheng Gao v. U.S. Attorney General compels no different conclusion. In that case, the alien who reported offending booksellers to Chinese authorities knew only that there was a possibility that the booksellers "could" be arrested and imprisoned, but nothing indicated that any bookseller had, in fact, been subjected to such treatment. 500 F.3d at 100 (emphasis in original). Rather, the most serious sanction that petitioner knew ever to have been imposed on a reported bookseller was revocation of a business license. See id. It was in these circumstances—with no evidence of persecution ever resulting from the alien's conduct—that we were "unable to conclude" that the alien had "the requisite level of knowledge that his acts assisted in persecution to sustain a finding that he was a 'persecutor' under the statute." Id. at 102. By contrast, here, Meng admitted knowing that forced abortions and sterilizations were the typical punishment meted out to women she reported for unauthorized pregnancies. Where, as in this case, the occurrence of the persecution is undisputed, and there

11

is such evidence of "culpable knowledge that the consequences of one's actions would assist in acts of persecution," Xu Sheng Gao specifically states that "the evidence need not [further] show that the alleged persecutor had specific actual knowledge that his actions assisted in a particular act of persecution." Id. at 103.[1]

Yanqin Weng v. Holder also affords Meng no support in challenging the application of the persecutor bar to this case. 562 F.3d at 515. In Yanqin Weng, the petitioning alien, a nurse's assistant, provided post-surgical medical care to women in China who had undergone forced abortions and, on one occasion, sat outside the locked door of a room where women awaiting forced abortions were being held until delayed doctors arrived to perform the procedures. See id. at 512, 515. In concluding that the persecutor bar did not apply to these circumstances, this court observed that the petitioner's provision of post-surgical care did not contribute to the abortions. See id. at 515. As for petitioner's guarding women facing forced abortions, that one-time occurrence was deemed to have "deviated markedly from her routine duties" and lasted only ten minutes

---

[1] Xu Sheng Gao also concluded that the reporting petitioner did not assist in persecution that reflected the discretionary decision of others at the end of an attenuated chain of authority. See 500 F.3d at 101–02. But where, as here, Meng's reports regularly resulted in persecution, she knew that, and she nevertheless continued to report, we conclude that the agency has a substantial basis for finding assistance and applying the persecutor bar.

12

before petitioner, in fact, helped one of the women escape, which resulted in petitioner losing her job. Id. Here, as already noted, Meng's reporting of women pregnant in violation of China's family planning policy did contribute directly to the forced abortion and sterilization of these women. Further, Meng engaged in such reporting over a period of two decades. In short, her assistance in persecution was not a single, marked departure from her duties, but a regular, and important, aspect of her duties. While Meng may have encouraged some women to hide or flee to avoid the persecution that she knew would follow from her conduct, the record indicates that Meng nevertheless persisted in reporting women with unauthorized pregnancies as long as she served as a public security official.

Accordingly, because the record evidence was sufficient to support a finding that Meng assisted in persecution, we identify no legal error in the agency's determination that the persecutor bar rendered Meng ineligible for asylum or withholding of removal.

D.    CAT Relief

A petitioner seeking CAT relief must demonstrate that it is "more likely than not" that she will be tortured if removed to her home country. See 8 C.F.R.

13

§ 208.16(c)(2); Yan Yan Lin v. Holder, 584 F.3d at 82. Here, we identify no error in the agency's denial of CAT relief for failure to satisfy this requirement.

Meng essentially relies on evidence of her past 14-day detention and beatings to argue likely future persecution. We need not here decide if this experience rose to the level of "torture," but see 8 C.F.R. § 1208.18(a)(2) (defining torture as "extreme form of cruel and inhuman treatment"); Kyaw Zwar Tun v. INS, 445 F.3d 554, 567 (2d Cir. 2006) ("[T]orture requires proof of something more severe than the kind of treatment that would suffice to prove persecution."), because even assuming that the issue were resolved in Meng's favor, she would not have demonstrated agency error.

Past torture does not give rise to a presumption of future torture. Rather, it serves as evidence of the possibility of future torture. See 8 C.F.R. § 1208.16(c)(3). Here, the following facts demonstrate why such a possibility cannot be converted into the requisite likelihood: (1) after Meng's release from detention, she remained in China for more than 10 months without experiencing any further harm; (2) Chinese authorities returned her passport, thereby allowing her to travel outside China; and (3) Meng's husband and children remain in China unharmed. See Melgar de Torres v. Reno, 191 F.3d 307, 313 (2d Cir. 1999)

14

(holding that where family members remain unharmed in petitioner's native country, objective fear of future harm is undermined); see also Mu Xiang Lin v. U.S. Dep't of Justice, 432 F.3d 156, 160 (2d Cir. 2005) (upholding denial of CAT relief where petitioner offered no "particularized evidence" that she would be tortured in her country of removal). We therefore conclude that substantial evidence supports the agency's determination that Meng has not demonstrated that it is "more likely than not" that she will be tortured if returned to China.

### III.   Conclusion

To summarize, we conclude:

1. The statutory persecutor bar rendered Meng ineligible for asylum and withholding of removal because, for over 20 years, she reported the identities of women with unauthorized pregnancies, knowing that, as a result, many of these women would be subjected to forced abortions and sterilizations. This showing was legally sufficient to demonstrate her assistance in persecution.

2. Meng is not entitled to CAT relief because she has not established that it is more likely than not that she will be tortured if removed to China.

Accordingly, the petition for review is DENIED.

15