NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3852
_____

YAQIN CHEN,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED
STATES OF AMERICA,
                              Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA 1:A088-379-417)
Immigration Judge: Hon. Miriam K. Mills
_____

Argued
June 4, 2015

Before:   FISHER, JORDAN, and SHWARTZ, *Circuit Judges*.

(Filed: July 22, 2015)
_____

Oleh Roman Tustaniwsky   [ARGUED]
2066 East 15th St. – Apt. 3C
Brooklyn, NY   11229
        *Counsel for Petitioner*

Samuel P. Go
United States Dept. of Justice
Office of Immigration Litigation
450 5th St., N.W. – Rm. 6042
Washington, DC   20001

Thomas W. Hussey
Andrew C. MacLachlan   [ARGUED]
United States Dept. of Justice
Office of Immigration Litigation, Civil Div.
P.O. Box 878
Ben  Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Yaqin Chen petitions for review of an order of the Board of Immigration Appeals

(the "Board") denying her request for asylum, withholding of removal, and relief under

Article III of the Convention Against Torture ("CAT").  We will deny the petition.

## I.     BACKGROUND

Chen, a native and citizen of the People's Republic of China, was admitted to the

United States on a K-1 nonimmigrant visa in 2003.  Although Chen's visa expired on

February 20, 2004, she has remained in the United States, where she has married and

given birth to two children.  On August 2, 2007, four months after the birth of her first

child and while pregnant with her second, Chen filed an application for asylum,

withholding of removal, and protection under CAT.  She alleged that, by giving birth to

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

two children, she would be viewed as having violated China's family planning policy and, therefore, if removed to China, would be subject to severe persecution such as sterilization, heavy fines, or imprisonment.

On September 10, 2007, Chen was interviewed by an asylum officer, Susan Perez, with the assistance of an interpreter provided by Chen. A written summary of the interview was prepared and read back to Chen, and she initialed each page and signed it under oath. The sworn summary of Chen's statements to the asylum officer certified that she had studied and served as a midwife in China for one year of internship and one additional year of work. Chen said that, as a midwife, she assisted doctors in performing at least ten abortions, of which five or six were done by force. She further stated that her assistance consisted of, among other things, handing "equipment" to the doctors performing the operations. (A.R. at 564.) Chen acknowledged that she knew some of the abortions with which she assisted were compelled because the patients involved were forced onto the operating table and, after the operations, she helped carry them out of the surgical room and talked with them. Chen also disclosed that she assisted doctors in performing sterilizations on two occasions. And while Chen did not describe precisely how she assisted with the sterilizations, she did testify that she knew the sterilizations were compelled because some of the patients were unwilling and some would be crying. Chen acknowledged that she was uncomfortable participating in some of the procedures. Indeed, she noted that she would "[s]ometimes cry in sympathy with women … but they had to go through with [the] operation and so [she] would pat [their] shoulders to comfort them." (A.R. at 565.) Despite any sympathy she may have felt, Chen said that had she

3

ever refused to assist in compelled birth control procedures, she would not have been able to become a full midwife and would lose her job.

The Department of Homeland Security charged Chen with being removable under 8 U.S.C. § 1227(a)(1)(B), for overstaying her visa. At a hearing on July 14, 2008, Chen offered testimony before an Immigration Judge ("IJ"). That testimony, however, contradicted key facts contained in the sworn summary of her interview with Officer Perez. Notably, Chen departed from her prior statement that she had assisted in five or six compelled abortions. She testified that government officials from China's family planning unit did not allow her to be involved in forced abortions and, therefore, she only observed the procedures. Chen testified that, "[a]t most, what we would do is give the nurses gloves or syringes" that contained "regular painkillers." (A.R. at 298, 299.) When asked by the IJ whether she could corroborate her story with any documents such as a curriculum description for the midwife program, Chen responded that she was unlikely to be able to obtain documents from her school in China.

On March 29, 2013, the IJ denied Chen's application for asylum and withholding of removal. That determination was based, in large part, on an adverse credibility determination due to Chen's "implausible and inconsistent testimony." (A.R. at 65.) Also, of particular importance was the IJ's conclusion that, as a result of assisting with compelled birth control procedures, Chen was herself a persecutor and thus barred from receiving asylum or withholding of removal. The IJ reasoned that Chen "[f]ail[ed] to rebut the evidence of her ineligibility based on the persecutor bar, by a preponderance of the evidence … ." (A.R. at 65.) The IJ also concluded that Chen failed to show that she

4

would more likely than not be tortured upon her return to China. Subsequently, on August 25, 2014, the Board dismissed Chen's appeal of the IJ's decision. She then filed this timely petition for review.

## II. DISCUSSION[1]

### A. ASYLUM AND WITHHOLDING OF REMOVAL

We must address two questions in determining whether the IJ properly denied Chen's application for asylum and withholding of removal: first, whether the IJ correctly concluded that Chen engaged in persecution while in China, thus triggering the "persecutor bar"; and second, whether substantial evidence supports the IJ's determination that Chen failed to rebut the application of that bar. In our estimation, the

---

[1] The Board had jurisdiction under 8 U.S.C. § 1103(g)(2) and 8 C.F.R. § 1003.1(b)(3) and we have appellate jurisdiction pursuant to 8 U.S.C. § 1252(a). "We review the [Board]'s legal determinations de novo, subject to the principles of deference articulated in *Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)." *Catwell v. Att'y Gen.*, 623 F.3d 199, 205 (3d Cir. 2010). While we have not previously stated if this standard of review covers the question of "whether an alien's conduct could render her a 'persecutor' as that term is statutorily defined," *Suzhen Meng v. Holder*, 770 F.3d 1071, 1073 (2d Cir. 2014), we need not decide that now because, whether we apply a deferential standard of review or simply review the matter de novo, the Board's legal determination in this case certainly stands. We review factual findings under the substantial evidence standard. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). Under that standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Stated differently, we "must uphold the [agency's] factual findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Lie v. Ashcroft*, 396 F.3d 530, 534 n.3 (3d Cir. 2005) (internal quotation marks omitted), *superseded on other grounds by statute*, 8 U.S.C. § 1158(b)(1)(B)(i) (replacing the "motivated, at least in part" standard with the "one central reason" standard). Consequently, the agency's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." *Abdille v. Ashcroft*, 242 F.3d 477, 484 (3d Cir. 2001).

IJ correctly concluded that the persecutor bar applies and substantial evidence supports the IJ's determination that Chen failed to rebut such application.

Asylum is a form of discretionary relief that allows an otherwise removable alien to remain and work in the United States if she can demonstrate that she is a "refugee."[2] 8 U.S.C. § 1158(b)(1)(A); 8 C.F.R. § 1208.13(b). The burden of proof is plainly on the applicant to establish eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B). To meet that burden, the petitioner must, with specific and credible evidence, establish past persecution on account of a statutorily protected ground, or a "well-founded fear" of future persecution on account of a protected ground. 8 C.F.R. § 208.13(b). The "well-founded fear of persecution" standard contains subjective and objective components. The subjective component requires the applicant to "present candid, credible, and sincere testimony demonstrating a genuine fear of persecution." *Dankam v. Gonzales*, 495 F.3d 113, 123 (4th Cir. 2007) (brackets and internal quotation marks omitted). To satisfy the objective component, the applicant must present "specific, concrete facts that would cause a reasonable person in like circumstances … to fear persecution." *Id*. (omissions in original) (brackets and internal quotation marks omitted). "The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is

---

[2] The Immigration and Nationality Act defines "refugee" as an alien who is "unable or unwilling to return to, and is unable or unwilling to avail … herself of the protection of, [her native] country because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *accord* 8 C.F.R. § 1208.13.

6

persuasive, and refers to specific facts … ."  8 U.S.C. § 1158(b)(1)(B).  In addition, the IJ

"may weigh the credible testimony along with the other evidence of record."  *Id.*

Withholding of removal is a form of mandatory relief that prevents the removal of

an alien to a country where "the alien's life or freedom would be threatened … because

of the alien's race, religion, nationality, membership in a particular social group, or

political opinion."  *Id.* § 1231(b)(3).  Notably, the standard for establishing a claim of

withholding of removal is higher than the standard for asylum.  *Gomez-Zuluaga v. Att'y*

*Gen.*, 527 F.3d 330, 348 (3d Cir. 2008).  "As with asylum, [the applicant] must show that

any persecution is on account of a protected ground, but in addition, she must show that

such persecution is 'more likely than not' to occur."  *Id.*

Both asylum and withholding of removal are subject to a statutory "persecutor

bar," which renders an alien ineligible for either form of relief if she has "ordered,

incited, assisted, or otherwise participated in the persecution of any person on account of

race, religion, nationality, membership in a particular social group, or political opinion."

8 U.S.C. §§ 1158(b)(2)(A)(i), 1231(b)(3)(B)(i); *see Negusie v. Holder*, 555 U.S. 511, 513

(2009) ("An alien who fears persecution in his homeland and seeks refugee status in this

country is barred from obtaining that relief if he has persecuted others.").

Forced abortions and sterilization are, by law, defined as persecution.  8 U.S.C.

§ 1101(a)(42).[3]  This case requires us to determine whether Chen's acts of handing

---

[3] 8 U.S.C. § 1101(a)(42) provides in relevant part:

> [A] person who has been forced to abort a pregnancy or to
> undergo involuntary sterilization, or who has been persecuted

"equipment" to doctors performing those procedures constituted assistance or participation in such persecution. Because we have not articulated our own test to determine when an applicant has "assisted" or "otherwise participated" in persecution, we turn to other circuits for guidance.

The United States Court of Appeals for the Second Circuit employs a four-part test to assess whether the persecutor bar applies: first, the alien must have been involved in an act of persecution; second, a nexus must be shown between the persecution and the victim's race, religion, nationality, membership in a particular social group, or political opinion; third, if the alien did not herself incite, order, or actively carry out the persecution, then her conduct must have assisted the persecution; and fourth, the alien must have had sufficient knowledge that her actions may assist in persecution to make those actions culpable. *Suzhen Meng v. Holder*, 770 F.3d 1071, 1074 (2d Cir. 2014). The Fourth Circuit utilizes a two-part test: first, whether there is a "nexus between the alien's actions and the persecution of others, such that the alien can fairly be characterized as having actually assisted or otherwise participated in that persecution"; and second, a showing that the alien acted with scienter or with "some level of prior or contemporaneous knowledge that the persecution was being conducted." *Quitanilla v.*

_____

> for failure or refusal to undergo such a procedure ... shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

*Holder*, 758 F.3d 570, 577 (4th Cir. 2014) (internal quotation marks omitted). The Sixth Circuit also applies a two-part test, which is very similar to the one just stated: first, there must "be some nexus between the alien's actions and the persecution of others, such that the alien can fairly be characterized as having actually assisted or otherwise participated in that persecution"; and, second, "if such a nexus is shown, the alien must have acted with scienter; the alien must have had some level of contemporaneous knowledge that the persecution was being conducted." *Abdallahi v. Holder*, 690 F.3d 467, 476 (6th Cir. 2012). The Ninth Circuit likewise employs a two-part test: first, "whether the petitioner's involvement was active or passive"; and second, "whether the petitioner's acts were material to the persecutory end." *Kumar v. Holder*, 728 F.3d 993, 998-99 (9th Cir. 2013) (relying on *Miranda Alvarado v. Gonzalez*, 449 F.3d 915 (9th Cir. 2006)); *see also Chen v. Att'y Gen.*, 513 F.3d 1255, 1259 (11th Cir. 2008) ("The standard for determining whether an asylum applicant is ineligible for asylum and withholding of removal due to assistance or participation in persecution is a particularized, fact-specific inquiry into whether the applicant's personal conduct was merely indirect, peripheral and inconsequential association or was active, direct and integral to the underlying persecution."); *Castañeda-Castillo v. Gonzales*, 488 F.3d 17, 21-22 (1st Cir. 2007) (en banc) (finding that knowledge, or scienter, is required to impose persecutor bar); *Singh v. Gonzales*, 417 F.3d 736, 739-41 (7th Cir. 2005) (discussing the nexus requirement).

If the government asserts that the persecutor bar applies to an alien's application for asylum or withholding of removal, it bears the burden of making a prima facie showing that the evidence supports that conclusion. *See Quitanilla*, 758 F.3d at 579

9

(upholding an Immigration Judge's decision that the government had "satisfied its prima facie burden of showing [the applicant's] involvement in the persecution of others"); *Xu Sheng Gao v. Att'y Gen.*, 500 F.3d 93, 103 (2d Cir. 2007) ("[O]nce the government has satisfied its initial burden of demonstrating that the persecutor bar applies, the burden would then shift to the applicant to disprove knowledge."); *Castañeda-Castillo*, 488 F.3d at 21 ("[O]nce the government introduced evidence of the applicant's association with persecution, it then became Castañeda's burden to disprove that he was engaged in persecution.");[4] *cf.* 8 C.F.R. § 1240.8(d) ("If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, [such as the persecutor bar,] the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.").  Once the bar is triggered, an applicant has the opportunity and obligation to rebut it.  8 C.F.R. § 1240.8(d).

Most recently, in *Suzhen Meng v. Holder*, the Second Circuit held that the persecutor bar applied to an applicant for asylum and withholding of removal who had "assisted" in persecution by reporting pregnant women to Chinese authorities knowing that, as a result of the reports, a number of those women would be subjected to forced abortions or sterilizations.  770 F.3d at 1074-75.  Similarly, in *Xie v. INS*, the same court stated that when "the conduct was active and had direct consequences for the victims" – as opposed to conduct that "was tangential to the acts of oppression and passive in

---

[4] *Castañeda* relied on the burden of proof provision in 8 C.F.R. § 1208.13(c)(2)(ii), which applies to asylum applications filed before April 1, 1997. Because Chen's application was filed after that date, her case is governed by 8 C.F.R. § 1240.8(d), which contains similar language with respect to the proper burden of proof.

nature" – then such conduct qualifies as persecution. 434 F.3d 136, 143 (2d Cir. 2006). Applying that standard, *Xie* held that a petitioner who had worked as a driver for a Chinese family planning unit and had "transported pregnant women to hospitals in the locked back of a van, against their will, so that county officials could perform forced abortions on them," was subject to the persecutor bar because the conduct was active and had direct consequences for the victims. *Id*. at 138, 143.

In *Weng v. Holder*, by contrast, the court held that the persecutor bar did not apply to a nursing assistant who provided post-surgical medical care in China to women who had undergone forced abortions. 562 F.3d 510, 512-15 (2d Cir. 2009). On one occasion, the nursing assistant sat outside the locked door of a room where women awaiting forced abortions were being held until delayed doctors arrived to perform the procedure. In concluding that the persecutor bar did not apply, the Second Circuit observed that the petitioner's provision of *post*-surgical care did not contribute to the abortions. *Id*. at 515. As for the petitioner's guarding women facing forced abortions, that one-time occurrence was deemed to have "deviated markedly from her routine duties" and lasted only ten minutes before petitioner, in fact, helped one of the women escape, which resulted in the petitioner losing her job. *Id*.

Similarly, in *Yan Yan Lin v. Holder*, the Second Circuit held that the persecutor bar did not apply to an applicant who did not participate in the abortion procedure itself but did perform examinations, such as ultrasounds and other prenatal examinations, which were sometimes used to determine an unborn child's position in order for the doctor to perform a forced abortion. 584 F.3d 75 (2d Cir. 2009). The *Yan Yan Lin* court

11

noted, "[t]he kinds of examinations in which Lin assisted (*e.g.*, ultrasounds) are given to all pregnant women, whether the pregnancy is scheduled to result in a live birth, a voluntary abortion, or a forced abortion. The exams are more akin to routine patient care than a protocol specific to forced abortions." *Id.* at 81. The court also reasoned that, as in *Weng*, the examinations in *Yan Yan Lin* "did not contribute to, or facilitate, the victims' forced abortions in any direct or active way because they did not cause the abortions, nor did they make it more likely that they would occur." *Id.* (internal quotation marks and brackets omitted); *cf. Kumar v. Holder*, 728 F.3d 993, 999 (9th Cir. 2013) ("For instance, a cook or a plumber who works at a prison may be integral to the functioning of the facility, but his duties are hardly integral to the persecution that might occur within the prison's walls."). When assessing the petitioner's conduct as a whole, *Yan Yan Lin* also took into account a "redemptive act" taken by the petitioner when she helped a woman escape the hospital prior to a forced abortion and determined that this weighed against the application of the persecutor bar. *Id.* at 81-82.

In light of those precedents, we conclude that the IJ correctly applied the persecutor bar to Chen's conduct. More specifically, using the Second Circuit's test,[5] we conclude that: first, Chen participated in multiple compelled birth control procedures, which are acts of persecution, 8 U.S.C. § 1101(a)(42)); second, there is a nexus between those acts of persecution and the victims' political opinion, *id.*; third, at the very least,

---

[5] Our conclusion would be the same if we were to apply the more compressed two-step tests articulated by other circuit courts.

Chen's conduct assisted the persecution; and fourth, Chen was aware that her assistance contributed to compelled abortions and sterilizations.

Chen argues that the persecutor bar should not apply because her conduct was at most only "tangential" and "passive accommodation" of the conduct of others. (Opening Br. at 23.) She asserts that she is like the petitioner in *Weng* who provided post-surgical care and therefore did not materially contribute to the abortions. But that is patently not so. Unlike the petitioner in *Weng*, Chen's act of handing equipment to doctors performing compelled birth control procedures was active, not passive, and it occurred during the procedures, not after the fact. Rather than being one or two steps removed from the abortions or sterilizations, Chen played a direct role in effectuating them. Indeed, even Chen's revised version of her involvement in the procedures – "giv[ing] the nurses gloves or syringes" – involves active contribution to forced abortions. (Opening Br. at 24.)

Chen's level of participation is also distinguishable from the petitioner in *Yan Yan Lin*, who performed ultrasounds on women who were about to undergo forced birth control procedures. Unlike that petitioner, Chen's assistance during such procedures contributed directly to the persecution. In addition, unlike the petitioner whose acts were highlighted in *Yan Yan Lin*, Chen was not engaged in the sort of prenatal care that women would normally seek out during their pregnancies. And while Chen may have expressed sympathy to the women who underwent forced birth control procedures, nothing in the record suggests that she took any redemptive steps, such as helping victims escape or otherwise trying to prevent the commission of such persecution. On balance, Chen's

13

statements in her application and even at the hearing indicate that she knowingly, willingly, and culpably participated in forcible sterilizations and abortions. As a result, the persecutor bar was triggered and she bore the burden of rebutting it.

In addition, substantial evidence supports the IJ's determination that Chen failed to rebut the persecutor bar. There is no infirmity in the IJ's conclusion that Chen was not credible and had failed to adduce any corroborating evidence. Chen told Officer Perez that she had assisted in abortions "10 or more times," of which "5 or 6" were done by force. (A.R. at 563-64.) Moreover, she told Officer Perez that she had assisted doctors in performing two compelled sterilizations. The transcript of her interview with Officer Perez clearly discloses that, in her capacity as a midwife, Chen assisted doctors in performing forced birth control procedures by handing the doctors equipment necessary to effectuate those procedures. But Chen changed her testimony when she appeared before the IJ. She said that Chinese family planning officials prevented her from even being in the room when forced birth control procedures were performed. And then she contradicted her own hearing testimony, stating that there actually were times when she was in the room during those procedures but, "[a]t most, what we would do is give the nurses gloves or syringes."[6] (A.R. at 298.) Chen thus made a series of significantly

---

[6] We also note that Chen's position remains inconsistent on appeal. She acknowledges that she witnessed about five or six forced abortions. Yet, she also asserts that she could not be present in the room for forced birth control procedures and she found out about the forced nature of such procedures by talking to patients after the procedures had finished. While this does not impact whether the IJ made a proper credibility determination, such inconsistency exemplifies Chen's inability to credibly settle on a consistent narrative.

14

inconsistent statements that the IJ could rightly view as undermining her credibility on the persecutor-bar issue.

We also agree with the IJ that Chen's failure to adduce any documentary evidence to corroborate her altered testimony is pertinent to the issues before us.  As we noted in *Sandie v. Attorney General*, aliens such as Chen can reasonably be expected to support testimony that is central to their claim with corroborating evidence that is subject to verification.  562 F.3d 246, 252 (3d Cir. 2009).  Given Chen's shifting story, such corroboration was called for.  *See* 8 U.S.C. § 1158(b)(1)(B) ("The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee.").  But Chen has provided neither corroboration nor a satisfactory explanation for her failure to do so.  There is no official summary of her curriculum or job duties, nor any other document that could support her claim that prospective and newly-minted midwives from her school were not permitted to be in the room for forced birth control procedures.  She simply states that she does not believe she could obtain corroborating evidence.  That does not suffice, and we will not disturb the IJ's conclusion on this point.  *See* 8 U.S.C. § 1252(b)(4) ("No court shall reverse a determination made by a trier of fact with respect to availability of corroborating evidence … unless the court finds … that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.").

**B.     DENIAL OF RELIEF UNDER THE CONVENTION AGAINST TORTURE**

Chen argued in her opening brief that the IJ's denial of her application for relief under CAT was deficient.  Specifically, she asserted that the IJ failed to address a letter from her father in which he said that an official who worked at the village birth control office told him that Chen could face sterilization and a heavy fine if she returned to China.  In response, the government argues that Chen did not raise this claim of error before the Board and thus may not raise it in her petition for review.  Chen's counsel conceded at oral argument that Chen's claim regarding the letter was not raised before the Board.  Accordingly, she has waived her right to rely on the IJ's failure to consider the letter as evidence that the IJ did not adequately consider her CAT claim.  To the extent Chen attacks the IJ's denial of her application for relief under CAT more generally, we cannot conclude that the record evidence, including the letter, compels a conclusion that it is more likely than not that Chen will be tortured if removed to China.  As a result, we will deny her petition as it relates to relief under CAT.

**III.     CONCLUSION**

For the foregoing reasons, we will deny the petition for review.